## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BIJON B.**, a Minor, By and Through His Mother, guardian, and next friend, Olivia B., | : | |
| and | : | CIVIL ACTION |
| **OLIVIA B.,** Individually and on Her Own Behalf, | : | NO. |
| Plaintiffs, | : | |
| v. | : | |
| **SANKOFA ACADEMY CHARTER SCHOOL,** | : | |
| and | : | |
| **DR. LAMONT McKIM,** In his Individual capacity | : | |
| Defendants | : | |

## COMPLAINT

### PRELIMINARY STATEMENT

Bijon B.and his mother, Olivia B., in her own right and as Bijon's parent and natural guardian, bring this action against the Sankofa Academy Charter School (hereafter "Sankofa") and its Chief Executive Officer, Dr. Lamont McKim, to enforce Bijon's pendent educational placement at The Vanguard School ("Vanguard"), and to enforce a Settlement Agreement pursuant to which Bijon and his mother executed a general release in consideration for Bijon's placement at Vanguard. Because Sankofa has failed to pay Bijon's tuition at Vanguard for either the 2012-13 or 2013-14 school years, Vanguard has notified Counsel for Oliva B. that it is unilaterally terminating his placement there unless it receives immediate payment of all tuition payments which it is owed.

Sankofa, having secured the dismissal of Bijon's due process hearing through the vehicle of a legally enforceable Notice of Recommended Educational Placement (NOREP) and a binding Settlement Agreement, have failed and/or refused to abide by the "stay-put" provisions of the IDEA, and have violated the specific terms of the Settlement Agreement.  Plaintiffs contend that Sankofa and Dr. McKim, who is sued in his individual capacity, have jointly and/or severally interfered with Bijon's well-established federal statutory rights and violated its contractual obligations under Pennsylvania law.

Defendants joint and several actions have deprived Bijon and his mother of federally protected civil rights guaranteed them by the IDEA, 20 U.S.C. §1400, *et seq.,* and Section 504, 29 U.S.C. §794, *et seq.*, and  42 U.S.C. §1983.  In addition to their federal claims, they bring pendent state law claims for breach of contract and promissory estoppel.  Plaintiffs seek declaratory relief as well as temporary and permanent injunctive relief requiring Defendants to make immediate payment to Vanguard to preserve Bijon's placement there.  They invoke the automatic injunction provision set forth in Section 1415 (j) of the IDEA.  They also seek permanent injunctive relief and ongoing judicial oversight to ensure that Defendants  effectuate Bijon's placement at Vanguard, or any subsequent placement, without further disruption. Finally, Plaintiffs seek compensation for all the costs, attorneys fees, and other expenses they have incurred in the prosecution of this action.

### JURISDICTION AND VENUE

1.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1331, this being an action arising under the laws of the United States.  Jurisdiction is further predicated upon 42 U.S.C. §1343 and 1983.  Plaintiffs' state law contract and estoppel claims rest on the

doctrine of pendent jurisdiction.

2.     Venue is proper under 28 U.S.C. §1391 because Plaintiffs reside in Chester

County, Pennsylvania, where Sankofa is located, and where Plaintiffs' causes of action arose.

**PARTIES**

3.     Bijon B. is a 19-year old student with disabilities who resides within

the confines of the Coatesville Area School District ("the District").  Bijon is an "eligible

student" as defined by the IDEA.  Likewise, he is a person with a disabilities who is eligible for

the protection of Section 504 of the Rehabilitation Act, 29 U.S.C. §794, *et seq.*

4.     Olivia B. is Bijon's mother.  At all times relevant to this Complaint,

she has resided with Bijon within the boundaries of the District.

5.     Sankofa is a charter school located at 446 West Gay Street, West Chester, PA.

6.     Bijon began attending Sankofa when he was in 7th Grade, during the 2007-8

school year.

7.     Sankofa is a local education authority (LEA) within the meaning of the IDEA.  20

U.S.C. §1401 (3).  For purposes of Section 504, Sankofa is a recipient of federal financial

assistance.  Likewise, it is a "person" as defined by Section 1983.

8.     Dr. Lamont McKim is the founder and CEO of Sankofa.  He is the official policy

maker for Sankofa and/or the individual responsible for the implementation of its policies,

procedures, and expenditures.  He personally has exercised his actual or apparent authority to

deprive Bijon of the funding to which he is entitled to maintain his placement at Vanguard

pursuant to the operative NOREP and the aforementioned Settlement Agreement.   McKim is "a

person" for purposes of Section 504, 34 C.F.R. §100.7, and the Civil Rights Act of 1871, 42

U.S.C. §1983.

**STATUTORY AND REGULATORY BACKGROUND**

9.      Pursuant to the IDEA and Section 504, LEA's are required to locate, evaluate and identify children with disabilities and provide them with a free and appropriate public education (FAPE).  20 U.S.C. § 1401 (a); 34 CFR Part 300 (IDEA); 29 U.S.C. Section 794; 34 C.F.R. Section 104.1 *et seq.* (Section 504).

10.      The terms of a child's special education program under the IDEA are set forth on an individualized education program (IEP).  The child's placement is documented on a Notice of Recommended Placement (NOREP).

11.      Once enrolled in a Charter School, the obligations held by a special education child's home school district pass to the charter school, which is thereafter solely responsible for providing FAPE and ensuring compliance with Section 504.

12.      The IDEA provides procedural safeguards to enable meaningful parental participation in matters concerning their child's educational program, and allows parents to obtain administrative and judicial review of an LEA's decisions concerning their child's education.  20 U.S.C. Section 1415.  Section 504 requires similar procedural protections.  34 C.F.R. § 104.36 (a).

13.      When parents request a due process hearing to resolve a dispute between themselves and the LEA, a special education hearing officer is assigned to hold an evidentiary hearing and render a timely decision.   20 U.S.C. 1415 (b)(6).

14.      In the event that either party is "aggrieved" by the hearing officer's decision, that party may seek further relief by filing an action in federal court.  The Court is vested with the

power to grant such relief as it deems appropriate.  20 U.S.C. §1415 (I)(2).

15.    In order to ensure a comprehensive scheme for the delivery of special education services, federal courts have jurisdiction to enforce settlement agreements under the IDEA and Section 504, whether or not parties are "aggrieved" pursuant to Section 1415.  *D.R.v, East Brunswick Bd. Of Educ.,* 109 F.3d 896 (3rd Cir. 1997); *L.J. v. Audobon Bd of Educ.,* 2006 U.S. Dist. LEXIS 96510 (D.N.J. Dec. 22, 2006), *citing Jeremy H. v. Mount Lebanon Sch. Dist.,* 95 F.3d 272, 278-9 (3d Cir. 1996), *citing Robinson v. Pinderhughes,* 810 F.2d 1270 (4th cir. 1987); *McClendon v. Sch. Dist. of Philadelphia*, 2004 U.S. Dist. LEXIS 22198 (E.D. Pa. Oct. 29, 2004).

16.    The Third Circuit has expressed strong preference for the settlement of IDEA claims as a matter of public policy and recognizes the inherent authority of district courts to enforce settlement agreements reached during the course of due process proceedings.

**ADMINISTRATIVE PROCEEDINGS**

17.    Because Plaintiffs are seeking to enforce Bijon's pendency rights pursuant to 20 U.S.C. 1415 (j), the automatic injunction provision of the IDEA, no exhaustion is required. *Digre v. Roseville Sch. Indep. Dist.,* 841 F.2d 245 (8th Cir. 1988); *Cole v. Metropolitan Gov't. of Nashville,* 954 F. Supp. 1214, 1222 (M.D. Tenn. 1997).

18.    Even if the IDEA's automatic injunction provision here inapplicable, Plaintiffs do not challenge the substance of Bijon's pendent educational program, but only the Defendants' refusal to fund his placement pursuant to the operative NOREP and the January 5, 2013 Settlement Agreement, both of which require them to do so.

19.    The instant action does not involve any of the educational matters for which due process hearings are designed and the IDEA's exhaustion requirements are required.  Thus, no

exhaustion is necessary because Plaintiffs are not seeking relief "also available" under the IDEA. 20 U.S.C. 20 U.S.C. § 1415 (k).

20.     Exhaustion, even if it were available, would be futile and is thereby excused because Defendants have refused to comply with the terms of their own placement decision. *John G. v. Northeastern Educ. Intermediate Unit 19,* 2007 WL 1450365 (M.D. Pa. May 15, 2007); *Derrick F. v. Red Lion Area Sch. Dist.,* 2008 WL 4890178 (M.D. Pa. Oct. 31, 2008).

**FACTUAL STATEMENT**

21.     Bijon has specific learning disabilities and other health impairments that impact his ability to learn, process receptive language, and benefit from educational instruction. Bijon needs specialized learning supports and accommodations in order to make meaningful educational progress and to benefit from his educational program as effectively as his non-disabled peers.

22.     At all times relevant to this Complaint, Bijon's enrollment at Sankofa has been funded by the District pursuant to Pennsylvania's Charter School Law, using a combination of state and federal funds. Sankofa receives additional funding for Bijon because he is a special education student as defined by state and federal law.

23.     On June 22, 2012, after years of FAPE denial, Olivia B. filed a due process complaint with Pennsylvania's Office of Dispute Resolution (ODR) alleging that Sankofa had denied FAPE to Bijon on an on-going basis since 2008, in violation of his rights under the IDEA and Section 504. Among other things, she sought compensatory education and an appropriate placement for her son. A true and correct copy of the due process complaint, dated June 22, 2012 is attached hereto as Exhibit "A" and incorporated by reference herein.

24.     ODR assigned the due process complaint to a hearing officer, and set a hearing date for September 25, 2012.

25.     After a resolution meeting held on July 25, 2012, the parties agreed to enter into a tolling agreement to preserve Bijon's claims while the parties worked on resolving them without a hearing.

26.     The settlement process extended into December, 2012 due to disputes as to the extent to which Sankofa would fund a compensatory education trust for Bijon. Meanwhile, however, on October 26, 2012, Sankofa agreed to fund Bijon's placement at Vanguard, and it issued a Notice of Recommended Placement (NOREP) to effectuate the placement.

27.     The October 26, 2012 NOREP states that "due to Bijon's academic levels the LEA proposed that he receive special education services at an approved private school as his needs cannot be met in his current placement."

28.     Olivia B. signed the NOREP on October 27, 2012, pursuant to which Bijon began attending Vanguard on or about November 5, 2012.  A true and correct copy of the fully executed NOREP is attached hereto as Exhibit "B", and incorporated by reference herein.

29.     With or without a settlement agreement, the signed NOREP was a legally binding agreement on Sankofa's part to fund Bijon's placement at an approved private school, which the parties agreed would be at Vanguard.

30.     Once he began attending Vanguard pursuant to the NOREP and Vanguard began implementing the IEP, Vanguard became Bijon's pendent placement for purposes of the "stay put" provision of the IDEA.  20 U.S.C. § 1415 (j).

31.     By operation of the NOREP, Sankofa was obligated to continue funding Bijon's placement at Vanguard unless and until the parties agreed to change the placement, or a hearing officer determined that a new placement was warranted.  *See Honig v. Doe,* 484 U.S. 305 (1988); *Drinker v. Colonial School District,* 78 F.3d 859 (3rd Cir. 1996)(LEA's have no authority to interfere with "then-current" placement without complying with IDEA's procedures).

32.     Although Bijon's placement at Vanguard was resolved well before the settlement process was completed, and he had already started attending Vanguard pursuant to the NOREP, his placement there was specifically confirmed in the Settlement Agreement.

33.     On December 14, 2012, in exchange for Bijon's placement, among other things, Olivia B. signed the Settlement Agreement, which contained a general release and provided for the irrevocable dismissal of her due process complaint.

34.     Dr. McKim and Sankofa's Board of Directors approved the settlement agreement and executed it on January 5, 2013.  A true and correct copy of the fully executed Settlement Agreement is attached hereto and marked Exhibit "C."

35.     Pursuant to the Settlement Agreement, Sankofa had the right to convene an IEP meeting in the spring of 2013 and make an offer of FAPE for the 2013-14 school year.  Unless and until the parties agreed otherwise, however, Vanguard remained Bijon's pendent placement by operation of the existing NOREP.

36.     Sankofa did not convene an IEP meeting during the spring of 2013, and Bijon continued to attend Vanguard through the conclusion of the 2012-13 school year.

37.     With Sankofa's full knowledge and consent, Bijon attended Vanguard's summer ESY program, and returned to Vanguard for the 2013-14 school year.

-8-

38.    Unbeknownst to Olivia B., Sankofa failed to make tuition payments on Bijon's behalf, as required by the NOREP and the Settlement Agreement.

39.    Although Vanguard made many efforts to collect the required tuition payments from Sankofa, it did not notify Olivia B. or her counsel until February 3, 2014 that Sankofa had failed to comply with its responsibilities pursuant to the NOREP and Settlement Agreement.

40.    Because Sankofa has made no tuition payments on Bijon's behalf since he started attending Vanguard, Vanguard notified Olivia B. that it was in the process of exiting him from its program and would proceed unless it received immediate payment of all outstanding tuition payments.

41.    Defendants' failure to fund Bijon's placement is the only reason Vanguard wishes to exit him from its program.

42.    Upon receiving notice that Vanguard planned to remove Bijon from his placement, Nancy Ryan, Esquire, counsel for Olivia B., contacted Defendants' counsel to ascertain why Sankofa was refusing to abide by the Settlement Agreement.

43.    Counsel for Sankofa could provide no explanation, other than that she had tried to secure compliance but had not been able to do so.  She could provide no date by which payment could be expected and indicated that she no longer represented Sankofa.

44.    Defendants' joint and several failure and/or refusal to ratify and abide by the October 26, 2012 NOREP and the ensuing Settlement Agreement, pursuant to which they secured  dismissal of the due process hearing and significant compromises of Bijon's legal rights and remedies, is intentional and under color of law.

45.     Defendants' actions have been taken with the knowledge that they violate Bijon's and his mother' rights under the IDEA and Section 504, which are protected from such violation by Section 1983, or with deliberate indifference to those rights.

46.     Sankofa's actions were committed, authorized and ratified by its CEO, Dr. Lamont McKim, whose acts may fairly be said to represent official policy, with intention to divest Bijon and his mother of their federally guaranteed rights and/or in deliberate indifference to those rights.

47.     The Court has the power to enforce the NOREP through the automatic injunction provision of 20 U.S.C. §1415 (j), which protects students with disabilities from having their educational placements interrupted by the arbitrary actions of LEA's.  The NOREP is self-executing and legally binding without regard to the Settlement Agreement.

48.     The Court has the inherent power to enforce the Settlement Agreement, which is necessary in order to preserve Bijon's right to FAPE, to remedy the violations of his and his mother procedural rights under the IDEA, Section 504 and Section 1983, and to support the public interest.

49.     Olivia B. relied on the NOREP to resolve the placement claims articulated in the due process complaint.  She significantly compromised her claims for compensatory education and attorneys fees reimbursement because of Sankofa's promise to fund Bijon's education at Vanguard was such a valuable benefit to her son, one which was immediate, non-contingent, and which she could not afford to provide him otherwise.

50.     If Bijon is removed from his placement at Vanguard, he will be sent back to Sankofa, which is not equipped to provide him with FAPE, thus leaving him without an

-10-

appropriate program or placement for the indefinite future.

51.    Given Bijon's age, and the continuing impact of the FAPE-deprivation he sustained before he went to Vanguard, any interruption in his programming would have a devastating impact on his readiness for post-high school transition.

52.    The deprivation of FAPE constitutes irreparable harm, and is inconsistent with the public interest as Congress has defined it through the IDEA and Section 504.

## COUNT I:
## AUTOMATIC INJUNCTION

53.    The factual averments set forth in Paragraphs 1- 52 are re-alleged and incorporated by reference herein.

54.    Bijon is a child with disabilities as defined by the IDEA, and is entitled to all the rights and remedies therein, and is entitled to assert those rights on his own behalf and through his mother.

55.    Bijon's legally pendent placement is at Vanguard, which Defendants are obligated to fund by virtue of the NOREP dated October 26, 2012.

56.    Defendants' unilateral failure to implement the financial obligations necessary to implement the NOREP has resulted in Vanguard's decision to exit Bijon from its program, and constitutes a "stay-put" violation prohibited by the IDEA, 20 U.S.C. §1415 (j).

57.    Plaintiffs are entitled to an automatic injunction requiring Defendants to make all payments necessary to preserve Bijon's placement at Vanguard, including all payments which are overdue and all payments which will become due pursuant to the operative NOREP.

## COUNT II: VIOLATION OF SETTLEMENT AGREEMENT
## PURSUANT TO THE IDEA, SECTION 504 AND SECTION 1983

58.   The allegations set forth in Paragraphs 1- 57  are re-alleged and incorporated by reference herein.

59.   Defendants, acting intentionally and under color of law, have failed to comply with the Settlement Agreement which legally binds them to fund Bijon's placement at Vanguard, and pursuant to which they secured significant compromises of Bijon's substantive and procedural rights under the IDEA and Section 504.

60.   Having reaped the benefit of the Settlement Agreement, Defendants have failed to fund Bijon's placement at Vanguard, resulting in Vanguard's decision to exit Bijon from the program unless payment is received forthwith, leaving him without an appropriate program and depriving him of FAPE.

62.   Defendants joint and several failure to comply with the terms of the Agreement, which is intentional or deliberately indifferent, deprives Bijon and his mother of their right to FAPE pursuant to the IDEA and Section 504, both of which are protected from such violation by Section 1983.

## COUNT III: BREACH OF CONTRACT

63.   The allegations set forth in Paragraphs 1- 62 are re-alleged and incorporated by reference herein.

64.   The October 26, 2012 NOREP, once it was accepted and signed by Bijon's mother on October 27, 2012, became a valid and binding contract under Pennsylvania law.

-12-

65.     The Settlement Agreement, signed by Olivia B. on December 14, 2012 and executed by Sankofa and its Board of Directors on January 5, 2012, constitutes a valid and binding contract under Pennsylvania law.

66.     In consideration for the promises provided by the Agreement, Bijon and his mother agreed to forego their due process claims, as well as any other claims they had or might have had from the beginning of time to the date of the Agreement.

67.     Solely in reliance on the Agreement, Bijon's mother agreed to have her due process complaint irrevocably dismissed, and gave up valuable procedural and substantive rights on her own behalf and on behalf of her son.

68.     Sankofa's failure to comply with the financial obligations it undertook pursuant to the Settlement Agreement and which it used to secure valuable concessions on the part of Olivia and Bijon B., constitutes a breach of contract.

69.     Due to the District's failure to comply with the Settlement Agreement, Plaintiffs have incurred fees and expenses in connection with their efforts to enforce the NOREP and the Settlement Agreement.

70.     If Vanguard follows through with its decision to exit Bijon from its program for non-payment of tuition, Plaintiffs will incur significant financial damages to secure comparable educational services. To the extent that no such services can be obtained, Bijon will suffer significant and long-term educational and vocational deprivations which will impact his adult functioning and interfere with his ability to be a self-sustaining adult.

71.     All of the damages Bijon and his mother have incurred or will incur as a result of Sankofa's breach of contract were foreseeable.

-13-

## COUNT IV: PROMISSORY ESTOPPEL

72.     The allegations set forth in Paragraphs 1-71 are re-alleged and incorporated by reference herein.

73.     Due to Bijon's mother' justifiable reliance on the District's intentional promises, the District and its Board of School Directors are bound by the doctrine of promissory estoppel to adhere to the terms of the Settlement Agreement *whether or not* it constitutes a formal contract.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request the following relief:

1.     A declaratory judgment that the District's actions have deprived Plaintiffs of federally protected rights guaranteed them by the IDEA, Section 504, and Section 1983.

2.     An injunction pursuant to 20 U.S.C. 1415 (j) and/or a temporary restraining order pursuant to Fed. R. Civ. P. 65 (b) requiring Defendants to make all outstanding payments to Vanguard forthwith as set forth in more detail in Plaintiffs' Motion for a Temporary Restraining Order.

3.     A permanent injunction requiring Defendants to timely comply with all of its obligations to ensure that Bijon's placement is not subject to further disruption.

4.     An order enforcing the Settlement Agreement dated January 5, 2013 pursuant to the Court's inherent authority under Section 1983 to ensure that Plaintiffs' federal rights under the IDEA and Section 504 are effectuated.

5.     A declaration that the Settlement Agreement described herein and attached hereto constitutes a contract pursuant to Pennsylvania law which is binding on the parties, and an order

-14-

prohibiting Defendants from any further attempts to avoid its obligations under the contract, or delay the implementation of those obligations.

6.      Pursuant to 20 U.S.C. § 1415 (i)(3)(B), and 42 U.S.C. §§ 1988 and 12205, an award of all the reasonable attorney fees and costs which Plaintiffs have incurred or will incur in prosecuting this action.

7.      Grant such other relief as this Court deems just and appropriate in order to enforce the NOREP and Settlement Agreement, and effectuate Bijon's and his mother rights pursuant to the IDEA, Section 504, and Section 1983.


Respectfully submitted,


LORRIE MCKINLEY, ESQUIRE
ID# 41211

**MCKINLEY AND RYAN, LLC**
238 West Miner Street
West Chester, PA 19382
Telephone (610) 436-6060
Facsimile (610) 436-6804


DATE:  February 7, 2014