**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

|  |  |  |
|---|---|---|
| OLIVIA B. on behalf of BIJON B., | : | CIVIL ACTION |
|  | : |  |
| Plaintiffs, | : |  |
|  | : |  |
| v. | : | No.  14-867 |
|  | : |  |
| SANKOFA ACADEMY CHARTER SCHOOL, | : |  |
| DR. LAMONT MCKIM, LOIS MOSES, | : |  |
| THE PENNSYLVANIA DEPARTMENT OF | : |  |
| EDUCATION, and CAROLYN DUMARESQ, | : |  |
|  | : |  |
| Defendants. | : |  |

| THE PENNSYLVANIA DEPARTMENT OF | : |
|---|---|
| EDUCATION, and CAROLYN DUMARESQ, | : |
|  | : |
| Third Party Plaintiffs, | : |
|  | : |
| SANKOFA ACADEMY CHARTER SCHOOL, | : |
| THE VANGUARD SCHOOL, and VALLEY | : |
| FORGE EDUCATIONAL SERVICES, | : |
|  | : |
| Third Party Defendants. | : |
|  | : |
|  | : |

---

**MEMORANDUM**

ROBERT F. KELLY, Sr. J.                                    AUGUST 1, 2014

Presently before this Court are two motions: (1) Plaintiffs, Bijon B. and Olivia B.'s

(collectively "Plaintiffs"), Motion for a Temporary Restraining Order, and Defendants,

Pennsylvania Department of Education and Carolyn Dumaresq's (collectively, the "State

Defendants") Response in Opposition, and (2) Defendants' Motion to Dismiss Plaintiffs' Second

Amended Complaint, and Plaintiffs' Response and In the Alternative Motion for Summary

Judgment, and Defendants' Reply thereto.  For the following reasons, Plaintiffs' Motion for TRO is denied, Defendants' Motion to Dismiss is granted, and Plaintiffs' Motion for Summary Judgment is denied.

## I.   BACKGROUND

### A.   The Parties

Plaintiff, Bijon B. ("Bijon"), is a 19-year old student with disabilities who resides within the confines of the Coatesville Area School District ("CASD").  Pls.' Second Am. Compl. ¶ 3. Plaintiff, Olivia B. ("Olivia"), is Bijon's mother.  Id. ¶ 4.

Defendant, Sankofa Academy Charter School ("Sankofa"), is a public charter school located at 446 West Gay Street in West Chester, Pennsylvania.  Id. ¶ 5.  In the context of this litigation, Sankofa is Bijon's Local Education Agency ("LEA").[1]  Id.  Defendant, Dr. Lamont McKim ("McKim"), is the founder and Chief Executive Officer of Sankofa.  Id. ¶ 8.  Defendant, Lois Moses ("Moses"), is the co-founder, Chief Accounting Officer and legal fiduciary for Sankofa.  Id. ¶ 10.  Moses oversees all of Sankofa's special education programs.  Id.  McKim and Moses are the official policy makers for Sankofa and have personal responsibility for implementing its policies, procedures and expenditures.  Id. ¶ 11.  After a public hearing held on March 24, 2014, the West Chester Area School District revoked Sankofa's charter effective June 20, 2014, for reasons of deficient financial record keeping and poor educational performance.[2]

---

[1] The Charter for Sankofa was revoked effective June 20, 2014.  (See Defs.' Reply Ex. 1.)  Due to this revocation, Sankofa is no longer Bijon's LEA.  (Id.)  It has been recently brought to the Court's attention that Bijon is currently enrolled in the CASD.  (See Doc. No. 60.)

[2] On July 11, 2014, The Philadelphia Inquirer reported that McKim is being investigated by police authorities for "scores of questionable transfers in the school's (Sankofa's) bank accounts." Report: Former W. Chester Sankofa Director Under Investigation, The Phila. Inquirer, July 11, 2014,

(See Defs.' Reply Ex. 1.)

Defendant, Pennsylvania Department of Education ("PDE"), is the State Education Agency ("SEA") for the Commonwealth of Pennsylvania and a recipient of federal financial assistance.  See Pls.' Second Am. Compl. ¶ 12.  Defendant, Carolyn Dumaresq ("Dumaresq"), is the Secretary of Education for the Commonwealth of Pennsylvania.  Id. ¶ 13.

## B.    The Individuals with Disabilities Education Act

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*., "represents an ambitious federal effort to promote the education of handicapped children, and was passed in response to Congress' perception that a majority of handicapped children in the United States 'were either totally excluded from schools or [were] sitting idly in regular classrooms awaiting the time when they were old enough to 'drop out.'"[3] Bd. of Educ. of Hendrick Hudson Central School Dist. Westchester Co. v. Rowley, 458 U.S. 176, 179 (1982) (quoting H.R. Rep. No. 94–332, p. 2 (1975)).  The IDEA requires States that receive federal funding to provide a free appropriate public education ("FAPE") to all disabled students.  Ferren C. v. School Dist. of Phila. 612 F.3d 712, 717 (3d Cir. 2010) (citing 20 U.S.C. § 1412(a)(1)(A)). Under the IDEA, the term FAPE means special education and related services that:

(A) have been provided at public expense, under public

_____

available at:
http://articles.philly.com/2014-07-12/news/51361074_1_sankofa-academy-charter-school-low-test-scores
-bank-accounts.

[3]In 1990, Congress changed the name of the Education of the Handicapped Act to IDEA.  See Heldman on Behalf of T.H. v. Sobol, 962 F.2d 148, 150 n.1 (2d Cir. 1992) (citing Pub.L. No. 101–476, 104 Stat. 1141)).  The IDEA has since been amended by the Individuals with Disabilities Education Improvement Act of 2004.  See 20 U.S.C.A. §§ 1400 *et seq.*  For the purpose of clarity, we refer to these iterations of the Act as IDEA.

> supervision and direction, and without charge; (B) meet the
> standards of the State educational agency; (C) include an
> appropriate preschool, elementary school, or secondary school
> education in the State involved; and (D) are provided in conformity
> with the individualized education program required under section
> 1414(d) of this title.

20 U.S.C.A. § 1401(9).  The right to a FAPE ensures that students with special education needs receive the type of education that will "prepare them for further education, employment, and independent living."  Id. (citing 20 U.S.C. § 1400(d)(1)(A)).  Pursuant to the IDEA, "a free appropriate public education is available to all children with disabilities residing within the State between the ages of 3 and 21."  20 U.S.C. § 1412(a)(1)(A).

The primary mechanism for implementing a FAPE is the individualized education program ("IEP").  See W.B. v. Matula, 67 F.3d 484, 492 (3d Cir. 1995) (reversed on other grounds).  An IEP is developed by a team of educators, specialists, and the student's parents to set forth a plan that will "enable the child to receive meaningful educational benefits in light of the student's intellectual potential" and unique needs.  C.G. v. The Commonwealth of Pennsylvania Dept. of Educ., 734 F.3d 229, 233 n.3 (3d Cir. 2013) (citing Shore Reg'l High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 198 (3d Cir. 2004)).  Thus, the IEP tailors the special educational services to the unique needs of the handicapped child.  20 U.S.C. § 1401(a)(18).

## C.   **Factual Record**

Plaintiff Bijon has specific learning disabilities and other health impairments that impact his ability to learn, process receptive language, and benefit from educational instruction.  See Pls.' Second Am. Compl. ¶ 12.  Due to these conditions, Bijon requires specialized learning supports and accommodations in order to make meaningful educational progress and to benefit

4

from his educational program as effectively as his non-disabled peers.  Id.

Bijon began attending Sankofa when he was in the seventh grade during the 2007-2008 school year.  Id. ¶¶ 6, 30.  The CASD has funded Bijon's education by making payments of public funds to Sankofa, using a combination of federal and state funds.  Id. ¶ 30.  On June 22, 2012, Olivia filed a due process complaint with Pennsylvania's Office of Dispute Resolution alleging that Sankofa had denied Bijon a FAPE since at least 2008 in violation of his IDEA and Rehabilitation Act ("RA") rights.[4]  Id. ¶ 31.  Among other things, Olivia sought compensatory education and an appropriate placement for Bijon.  Id.  The due process complaint was assigned to a hearing officer with a hearing date set for September 25, 2012.  Id. ¶ 32.  A resolution meeting was held between the parties on July 25, 2012, where the parties agreed to enter into a tolling agreement to preserve Bijon's claims while the parties worked on resolving the issues without a hearing.  Id. ¶ 33.  On October 26, 2012, Sankofa agreed to fund Bijon's placement at the Vanguard School ("Vanguard")[5], and issued a Notice of Recommended Placement ("NOREP") to effectuate the placement.[6]  Id. ¶ 34.  This NOREP stated that "due to Bijon's academic levels the LEA proposed that he receive special education services at an approved private school as his needs cannot be met in his current placement."  Id. ¶ 35.  Olivia signed the NOREP on October 27, 2012, and Bijon began attending Vanguard on or around November 5,

---

[4]The parties at times refer to these rights protected by the RA as § 504 claims.  These are one in the same as § 504 is a statutory provision of the RA.  As such, these terms are used interchangeably in this Opinion.

[5]Vanguard is a nonprofit, Pennsylvania licensed school located in Malvern, Pennylvania.

[6]A NOREP is utilized by an educational agency to communicate to parents an action proposed or an action refused.  See 34 C.F.R. § 300.503(a)(b).  This notice triggers the parents right to determine how to proceed if there is a dispute.  Id.

2012.  Id. ¶ 36.

A little more than a month later, Olivia entered into a Settlement Agreement (the
"Settlement Agreement") with Sankofa to resolve the placement claims she articulated in her due
process complaint.  Id. ¶ 42.  In the Settlement Agreement, Olivia relinquished her claims on
behalf of Bijon in exchange for Sankofa's promise to fund Bijon's education at Vanguard.  Id.
The Agreement was signed by Olivia on December 14, 2012, and by McKim and Moses on
January 5, 2013.  Id. ¶¶ 41, 43.  Beginning in April 2013, unbeknownst to Olivia, the CASD or
the PDE, Sankofa failed to make tuition payments on Bijon's behalf as required by both the
NOREP and the Settlement Agreement.  Id. ¶ 48.  Vanguard made multiple efforts to collect the
required tuition payments from Sankofa, and Sankofa repeatedly promised to submit the
payments.  Id.   ¶ 49.  Sankofa never made good on these promises.  Id.  Furthermore, at no time
did Sankofa advise Olivia, the CASD or the PDE that it was taking and keeping the money that
the CASD had been paying on behalf of Bijon, nor did Sankofa notify them that it was not
providing any funding for Bijon's placement to Vanguard.  Id. ¶ 50.  Due to Sankofa's failure to
make any tuition payments on Bijon's behalf since April 2013, Bijon's account is more than
$65,000 in arrears.  Id. ¶ 51.  There is no evidence that Vanguard attempted to remove Bijon, and
it is the Court's understanding that Bijon was able to finish the 2013-2014 school year at
Vanguard.[7]  At this time, with the closing of Sankofa, Bijon is currently enrolled in the CASD.
(See Doc. No. 60.)  It is unclear if the CASD will place Bijon at Vanguard for the upcoming
school year.

---

[7]In the Motion for TRO against Sankofa and McKim filed in early February of 2014, Plaintiffs
did advise the Court that Vanguard was initiating action to remove Bijon.  (See Pls.' Motion for TRO.)
However, there is no record of any actual attempt at removing Bijon from Vanguard.

Vanguard has not initiated any administrative or court proceedings against Sankofa to obtain payment for the overdue tuition.  However, Olivia on behalf of Bijon, filed a Motion for a Temporary Restraining Order ("TRO") mandating that Sankofa and McKim "make all tuition payments and comply with all other financial obligations necessary to preserve Bijon B.'s pendent special education placement at the Vanguard School, in accordance with the fully executed Notice of Recommended Assignment dated October 26, 2012 and the Settlement Agreement dated January 5, 2012."  (See Pls.' Motion for Temp. Restraining Order, Feb. 10, 2014.)  After a hearing was held on February 18, 2014, where both Sankofa and McKim failed to appear, this Court granted Plaintiffs' Motion and ordered Sankofa and McKim to make the required payments to Vanguard.  (See Order, Feb. 18, 2014.)  This suit against the State Defendants evidences that the payments have not been made by Sankofa or McKim.

**D.    Procedural History**

Plaintiffs filed a Complaint against Sankofa and McKim on February 10, 2014.  See Compl.  Neither Sankofa nor McKim has responded in any way to the filings by Plaintiffs in this matter.  On March 10, 2014, Plaintiffs amended the Complaint for a second time to include the PDE and Dumaresq.  See Second Am. Compl.  In this Second Amended Complaint, Plaintiffs argue that the State Defendants "have the responsibility pursuant to the IDEA, Section 504 and Section 1983 to supervise Sankofa and to ensure that Bijon receives a FAPE.  Should the Sankofa defendants default on their obligations to Bijon, the state defendants (PDE and Dumaresq), as the ultimate guarantor of FAPE, must step in and provide funding for Bijon's placement at Vanguard."  Id.  Specifically, Plaintiffs request that the Court grant two forms of relief from the State Defendants.  First, Plaintiffs ask the Court to enter a declaratory judgment

7

finding that "the actions of all the defendants, jointly and/or severally, have deprived Plaintiffs of federally protected rights guaranteed them by the IDEA, Section 504, and/or Section 1983." Id. at 19. Second, Plaintiffs seek a permanent injunction against the State Defendants requiring them "to provide the oversight required of them pursuant to the IDEA and otherwise ensure that Bijon's federal rights are protected and enforced, whether or not the Sankofa defendants meet their own legal obligations, including, but not limited to, funding Bijon's placement at Vanguard if the Sankofa defendants default on their obligations." Id. at 20.

In addition to the Second Amended Complaint, Plaintiffs filed a Motion for a TRO against the State Defendants on February 25, 2014. (See Pls.' Motion for TRO, Feb. 25, 2014.) In this Motion, Plaintiffs request that the Court enter a TRO compelling the State Defendants to either force Sankofa to pay Bijon's tuition, or, in the alternative, to pay the tuition directly on his behalf. (Id.)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the State Defendants filed a Motion to Dismiss Plaintiffs' Second Amended Complaint on May 5, 2014. (See Defs.' Motion to Dismiss.) In this Motion, the State Defendants contend that clear Third Circuit precedent declares that actions pursuant to 42 U.S.C. § 1983 ("§ 1983") are not available to remedy deprivations of rights secured by the IDEA or by the RA. (See Defs.' Reply, 7.) Furthermore, the State Defendants argue that Plaintiffs' RA claims are without merit because Plaintiffs have failed to show that any denial of service was due solely to Bijon's disability. (Id.) Moreover, the State Defendants assert that Plaintiffs have not and cannot meet the burden to obtain a permanent injunction. (Id.) Finally, the State Defendants incorporate by reference within the Motion to Dismiss a Memorandum of Law in Opposition to Plaintiffs' Motion for a

8

TRO.  (See Defs.' Mem. of Law in Opps'n to Pls.' Mot. for TRO, May 5, 2014.)

On March 10, 2014, the State Defendants filed a Third Party Complaint against Vanguard, Valley Forge Educational Services, and the CASD (collectively, the "Third Party Defendants").[8]  See State Defs.' Third Party Compl.  In this action, the State Defendants seek "judgment in its favor against the Third Party Defendants for all of the State Defendants' costs, damages, attorneys' fees or other liabilities arising from the Third Party Defendants' actions or omissions, and such other relief as the Court deems proper."  Id. at 8-10.  Furthermore, "in the event that a preliminary injunction requires PDE (the State Defendants) to pay for any tuition or a verdict is entered against" the State Defendants, then the State Defendants request a judgment against the Third Party Defendants for contribution and/or indemnity.  Id.

## II.     STANDARD OF LAW

### A.     Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Pursuant to Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has failed to set forth a claim from which relief may be granted.  Fed. R. Civ. P. 12(b)(6); see also Lucas v. City of Phila., No. 11-4376, 2012 WL 1555430, at *2 (E.D. Pa. May 2, 2012) (citing Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005)).  In evaluating a motion to dismiss, the court must view any reasonable inferences from the factual allegations in a light most favorable to the plaintiff.  Buck v. Hamilton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2002).

---

[8]Third Party Defendant, Valley Forge Educational Services, is a not-for-profit organization that oversees Vanguard.  See State Defs.' Third Party Compl. ¶ 6.

The Supreme Court set forth in Twombly, and further defined in Iqbal, a two-part test to determine whether to grant or deny a motion to dismiss.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The United States Court of Appeals for the Third Circuit ("Third Circuit") has noted that these cases signify the progression from liberal pleading requirements to more "exacting scrutiny" of the complaint. Wilson v. City of Phila., 415 F. App'x. 434, 436 (3d Cir. 2011).

Initially, the court must ascertain whether the complaint is supported by well-pleaded factual allegations.  Iqbal, 556 U.S. at 679.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Twombly, 550 U.S. at 555. Conclusions of law can serve as the foundation of a complaint, but to survive dismissal they must be supported by factual allegations.  Iqbal, 556 U.S. at 679.  These factual allegations must be explicated sufficiently to provide a defendant the type of notice that is contemplated by Rule 8. See Fed. R. Civ. P. 8(a)(2) (requiring a short and plain statement of the claim showing that the pleader is entitled to relief); see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Where there are well-pleaded facts, courts must assume their truthfulness.  Iqbal, 556 U.S. at 679.

Upon a finding of a well-pleaded complaint, the court must then determine whether these allegations "plausibly" give rise to an entitlement to relief.  Id. at 679.  This is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. Plausibility compels the pleadings to contain enough factual content to allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. 544 at 570).  This is not a probability requirement; rather plausibility

10

necessitates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" Id. (quoting Twombly, 550 U.S. at 557).  In other words, a complaint must not only allege entitlement to relief, but must demonstrate such entitlement with sufficient facts to nudge the claim "across the line from conceivable to plausible." Id. at 683; see also Holmes v. Gates, 403 F. App'x 670, 673 (3d Cir. 2010).

### B.     Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." See Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991).  The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "A fact is material if it could affect the outcome of the suit after applying the substantive law.  Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

11

party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Once the moving party

has produced evidence in support of summary judgment, the non-moving party must go beyond

the allegations set forth in its pleadings and counter with evidence that presents "specific facts

showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see also Big Apple BMW,

Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992).  "More than a mere

scintilla of evidence in its favor" must be presented by the non-moving party in order to

overcome a summary judgment motion.  Tziatzios v. United States, 164 F.R.D. 410, 411-12

(E.D. Pa. 1996).  If the court determines that there are no genuine issues of material fact, then

summary judgment will be granted.  Celotex, 477 U.S. at 322.

## III.   DISCUSSION

The central basis of the Complaint and the Motion for a TRO is Plaintiffs' belief that the

State Defendants are obligated by the IDEA, the RA and Section 1983 to not only supervise

Sankofa to ensure that Bijon receives a FAPE, but also to act as the guarantor of Sankofa's

obligations to Bijon arising from the Settlement Agreement.  Plaintiffs seek to effectuate such

actions through Court Orders in the form of  a declaratory judgment finding that "the actions of

all the defendants, jointly and/or severally, have deprived Plaintiffs of federally protected rights

guaranteed them by the IDEA, Section 504, and/or Section 1983", and a permanent injunction or

TRO.  (See Pls.' Second Am. Compl. at 19, 20; Pls.' Motion for TRO at 1.)  The State

Defendants have responded by filing a Motion to Dismiss rejecting Plaintiffs' claims.

Upon careful review, we deny Plaintiffs' claims and grant Defendants' Motion to Dismiss

for the following reasons.  First, clear precedent within this Circuit precludes Plaintiffs' § 1983

action.  See A.W. v. Jersey City Public Schools, 486 F.3d 791 (3d Cir. 2007).  Second, Plaintiffs'

have not and cannot show any discrimination based upon Bijon's disability, and, therefore, we find that Defendants have not violated the RA.  See Menkowitz v. Pottstown Mem'l Med. Ctr., 154 F.3d 113, 124 (3d Cir. 1998) (holding that plaintiff must show that the state failed to provide a service for the sole reason that the child is disabled).  Finally, Plaintiffs cannot satisfy the standards necessary for injunctive relief.

### A.   Plaintiffs' IDEA Claims

The touchstone of Plaintiffs' claims against the State Defendants is whether Bijon was provided with a FAPE under the IDEA.  See 20 U.S.C. § 1400(d)(1)(A) (stating that one of the main purposes of the IDEA is to "ensure that all children with disabilities have available to them a free appropriate public education").  The facts of this case clearly evidence that Bijon was afforded a FAPE.  Bijon attended the Vanguard School at no cost to himself or his parents. Furthermore, this case does not involve any issues related to the education provided Bijon by Vanguard.  Vanguard is an appropriate school that meets the standards of the State of Pennsylvania and Bijon's placement there was in conformity with the IEP.  As such, the elements required for a FAPE are satisfied and we find that there is no evidence of any violation of any of the rights afforded to Bijon by the IDEA.  See 20 U.S.C. § 1401(9) (noting the requirements of a FAPE).  Consequently, Plaintiffs' attempt at attaching liability to the State Defendants through invoking the IDEA is inconsistent with the facts of the case.[9]

Although Plaintiffs cloak their claims against the State Defendants in the protections of

---

[9]We note that the parties have argued extensively over whether Plaintiffs in this case must exhaust the administrative remedies set forth in the IDEA before bringing this suit in federal court. However, in light of our finding that Plaintiffs' claim is not pursuant to IDEA, we do not address this issue.

the IDEA, this is actually a state contract law action, which does not involve the State

Defendants.[10]  The contract underlying Plaintiffs' claims is the Settlement Agreement is solely

between Plaintiffs and Sankofa, McKim and Moses.  The relief Plaintiffs seek is the money owed

to Vanguard by Sankofa, McKim and Moses pursuant to the Agreement.

B.    **Plaintiffs' Rehabilitation Act Claims**

Plaintiffs allege that the State Defendants violated the RA by not ensuring that Bijon

received a FAPE.  In relevant part, Section 504 of the RA states, "no otherwise qualified

individual with a disability . . . shall, solely by reason of her or his disability, be excluded from

the participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  In order to

demonstrate an RA violation, a plaintiff must show:  "(1) he is 'disabled' as defined by the Act;

(2) he is 'otherwise qualified' to participate in school activities; (3) the school or the board of

education receives federal financial assistance; and (4) he was excluded from participation in,

denied the benefits of, or subject to discrimination at, the school."  Andrew M. v. Delaware Co.

Office of Mental Health & Mental Retardation, 490 F.3d 337, 350 (3d Cir. 2007) (quoting

Ridgewood v. Bd. of Education v. N.E., 172 F.3d 238, 253 (3d Cir. 1999)).

In this case, the RA permits recovery by Plaintiffs only if they demonstrate that Bijon was

deprived of an opportunity to participate in a program solely on the basis of his disability.  C.G.

v. The Commonwealth of Pennsylvania Dept. of Educ., 734 F.3d 229, 235-36 (3d Cir. 2013); see

also Menkowitz, 154 F.3d at 124.  Thus, Plaintiffs' RA claims require a showing that Bijon was

deprived of a FAPE because of his disability.  Andrew M. v. Delaware Co. Office of Mental

---

[10]This finding will be discussed in greater detail later in this Opinion.

Health & Mental Retardation, 490 F.3d at 350.  Even viewing the facts in a light most favorable

to Plaintiffs, it is evident that Plaintiffs have failed to show any such violation.  In fact, we find to

the contrary as the record illustrates that Bijon did in fact receive a FAPE.  For these reasons, we

dismiss Plaintiffs' RA claims.

> **C.      Plaintiffs' Section 1983 Claims**

Section 1983 does not create an independent cause of action.  Muhammad v. Dempsey,

531 F. App'x. 216, 219 (3d Cir. 2013).  It provides a means to redress alleged violations of rights

secured by the Constitution and laws of the United States.  Gjeka v. Delaware Co. Comm.

College, No. 12-4548, 2013 WL 2257727, at *8 n.13 (E.D. Pa. May 23, 2013) (citing  Halstead

v. Motorcycle Safety Found. Inc., 71 F. Supp. 2d 464, 472 (E.D. Pa.1999) ("Section 1983 does

not create a cause of action in and of itself; rather it provides redress for certain violations of

rights arising under the federal constitution or laws of the United States which are caused by

persons acting under color of state law.")).

Plaintiffs allege that Secretary of Education Dumaresq, while acting in her official

capacity, violated Bijon's rights under § 1983 by failing to implement and enforce the IDEA

and/or the RA.  (See Pls.' Resp. 21-22.)  However, we find Plaintiffs' arguments unavailing for

two reasons.  First, as stated previously, we find that there are no IDEA or RA violations in this

case.  Second, even if we did find that the State Defendants violated the rights bestowed upon

Bijon under the IDEA and the RA, which we do not, Plaintiffs' course of action is proscribed as

there is a clear prohibition on utilizing § 1983 for claims asserting the denial of a FAPE.  In A.W.

v. Jersey City Public Schools, 486 F.3d 791 (3d Cir. 2007), the Third Circuit, relying on

newfound Supreme Court precedent, precluded § 1983 as an avenue for attaining redress for the

alleged failure by state officials to provide a FAPE.  A.W., 486 F.3d at 803 (citing City of Rancho Palos Verdes v. Abrams, 544 U.S. 113 (2005)).  In reaching this conclusion, the Court explicitly reversed its prior decision in W.B. v. Matula, 67 F.3d 484, 494 (3d Cir. 1995), which had previously held that Congress specifically approved § 1983 actions as an avenue for IDEA claims.  W.B. v. Matula, 67 F.3d at 494 (holding that actions for violations of IDEA could be brought against school officials under § 1983), *abrogated by* A.W. v. Jersey City Public Schools, 486 F.3d 791 (3d Cir. 2007).

Plaintiffs attempt to narrow the effect of A.W. v. Jersey City Public Schools by asserting that "only claims based on rights subsumed by the IDEA and within the scope of the administrative process are so precluded."  (Pls.' Resp. 22.)  Plaintiffs cite to John G. v. Northeastern Educ. Intermediate Unit 19, 490 F. Supp. 2d 565 (M.D. Pa. 2007) in support of this contention.  We are puzzled by Plaintiffs' reliance on this decision for several reasons.  First, John G. v. Northeastern Educ. Intermediate Unit 19 was decided prior to A.W. v. Jersey City Public Schools.  Second, the ruling in  John G. v. Northeastern Educ. Intermediate Unit 19 was effectively overruled on a motion for reconsideration in light of the Third Circuit's holding in A.W. v. Jersey City Public Schools.  See John G. v. Northeastern Educ. Intermediate Unit 19, No. 06-1900, 2007 WL 2844828, at *3 (M.D. Pa. Sept. 26, 2007).  In this reconsideration, the Court explicitly held that "Plaintiffs' redress pursuant to IDEA violations belongs to IDEA's comprehensive remedial scheme."  John G. v. Northeastern Educ. Intermediate Unit 19, 2007 WL 2844828, at *2.  The similarity between the decisions and the instant case makes Plaintiffs' arguments even more bewildering.  Both A.W. v. Jersey City Public Schools and John G. v. Northeastern Educ. Intermediate Unit 19 raise FAPE claims analogous with Plaintiffs' claim.  In

16

such situations, the IDEA provides the proper channel to redress violations of any right "relating to the identification, evaluation, or educational placement of [a] child, or the provision of a free appropriate public education to such child."  A.W. v. Jersey City Public Schools, 486 F.3d at 803 (quoting § 1416(b)(6)); see also John G. v. Northeastern Educ. Intermediate Unit 19., 2007 WL 2844828, at *2.  In light of these clear decisions and the analogous circumstances of Plaintiffs' case, it is obvious that Plaintiffs' § 1983 claim is precluded.

### D.    Plaintiffs' Motions for Injunctive Relief

Plaintiffs seek to force the State Defendants, through either a TRO or a permanent injunction, to pay the money owed to Vanguard or to command the State Defendants to force Sankofa to pay this sum.  Though there are distinct standards necessary to attain a TRO and a permanent injunction, the elements to be proven by Plaintiffs in order to obtain such injunctive relief are similar.  For instance, to attain a TRO, Plaintiffs must establish that:  (1) Plaintiffs are likely to succeed on the merits; (2) there is a  potential for irreparable injury to Plaintiffs if relief is not granted; (3) the State Defendants will not be substantially harmed if relief is granted; and (4) the TRO will not adversely affect the public interest.[11]  Fink v. Supreme Court of Pennsylvania, 646 F. Supp. 569, 570 (M.D. Pa. 1986).  In order for the Court to grant a permanent injunction, the Plaintiff must demonstrate that: (1) Plaintiffs have shown actual success on the merits; (2) Plaintiffs will be irreparably injured by the denial of injunctive relief;

---

[11]Courts within this Circuit have noted the similarities between a TRO and a preliminary injunction, and have applied the same standards in determining their application.  See Nutrasweet Co. v. Vit-Mar Enterprises, Inc., 112 F.3d 689, 693 (3d Cir. 1997); see also BABN Technologies Corp. v. Bruno, No. 98–3409, 1998 WL 720171, at *3 (E.D. Pa. Sept. 2, 1998) (holding that the standard for a temporary restraining order is the same as that for a preliminary injunction); Cooper v. City of Philadelphia, 18th District, No. 93–3007, 1993 WL 274192, at *1 (E.D. Pa. July 2, 1993) (same).

(3) the granting of the permanent injunction will not result in even greater harm to the State

Defendants; and (4) the injunction would be in the public interest.  See Shields v. Zuccarini, 254

F.3d 476, 482 (3d Cir. 2001) (citing ACLU v. Black Horse Pike Reg'l Bd. of Educ., 84 F.3d

1471, 1477 n. 2–3 (3d Cir.1996)).  In this case, to garner a TRO and/or a permanent injunction,

Plaintiffs bear the burden of establishing all four elements.  See Shields, 254 F.3d at 482 (holding

that all four elements must be shown for permanent injunction); Cooper, 1993 WL 274192, at *3

(stating that where movant cannot establish each element of the test, a temporary restraining

order should not be issued).

        As these forms of injunctive relief share similar standards, we analyze them in

conjunction.  In consideration of the facts of the case, we find that Plaintiffs cannot satisfy the

necessary elements to obtain either a TRO or a permanent injunction.  From the outset, due to our

decision to deny Plaintiffs' IDEA, § 1983 and the RA claims, Plaintiffs cannot show that success

has been obtained or is likely to be obtained on the merits.  Neither can Plaintiffs establish

"irreparable harm" as the facts of the case and Bijon's current placement status belie any such

assertion.  While the failure to provide a FAPE constitutes irreparable injury, this is not the case

here.  See Massey v. District of Columbia, 400 F. Supp. 2d 66, 75 (D. D.C. 2005) (finding that

the failure to provide a FAPE constitutes irreparable injury).  As noted throughout this Opinion,

the record indicates that Bijon was able to finish the academic year at Sankofa.  Moreover, Bijon

is now officially enrolled in the CASD.  Thus, Bijon has been provided a FAPE and has not

suffered and will not suffer any irreparable injury warranting judicial intervention.  Because

Plaintiffs bear the burden of establishing each element of the four part test, their failure to satisfy

either of the first two elements proscribes the entrance of injunctive relief by this Court.  See

Karpov v. Karpov, 555 F. App'x. 146, 148 (3d Cir. 2014).  Consequently, Plaintiffs' Motion for a TRO and/or Permanent Injunction is denied.

## IV.    CONCLUSION

In closing we note the strange posture of this litigation.  Plaintiffs are suing the State Defendants under the IDEA, which is a federal statute, alleging that Bijon was not provided a FAPE.  However, the facts contradict Plaintiffs' assertion and indisputably indicate that there was no harm to Bijon.  Rather, in this case, the third-party beneficiary of the contract, Vanguard, suffers the only injury, which arises from Sankofa's failure to adhere to its obligations memorialized in the Settlement Agreement.  However, Vanguard has neglected to initiate any legal proceedings to collect this money.  Instead, Plaintiffs have initiated this circuitous action to collect the arrears on Vanguard's behalf under the guise of harm to Bijon.

In an effort to sort out this chaotic litigation, we find that, though Plaintiffs' claims appear to implicate IDEA, they are in effect contract law claims.  As the Third Circuit has noted in the IDEA context, when a "settlement agreement was voluntarily and willingly entered by the parties," the agreement constitutes "a binding contract between the parties and should have been enforced as written."  D.R. v. E. Brunswick Bd. of Educ., 109 F.3d 896, 898 (3d Cir. 1997).  In such cases, the appropriate law to apply is state contract law.  J.K. v. Council Rock Sch. Dist., 833 F. Supp. 2d 436, 452 (E.D. Pa. 2011).

In this case, the parties reside within the State of Pennsylvania.[12]  However, the State

---

[12]Ordinarily, the lack of diversity between the parties would strip the Court of jurisdiction.  See Robinson v. Temple University Health Services, 506 F. App'x. 112, (3d Cir. 2012) (holding federal court jurisdiction requires complete diversity of citizenship).  However, under the IDEA, a federal court retains jurisdiction where the settlement agreement was reached through a mediation process or resolution session.  20 U.S.C. §§ 1415(e)(2)(F)(iii); 1415(f)(1)(B)(iii).  For this reason, we retain jurisdiction.

Defendants are not parties to the Settlement Agreement.  Rather, the Agreement is between

Plaintiffs and Sankofa, and we find that the proper recourse for Plaintiffs is a breach of contract

claim against Defendant Sankofa.[13]  Plaintiffs make a vain attempt at imposing liability on

Defendants by generally asserting that the State Defendants are the guarantors of what in effect is

a contract solely between Plaintiffs and Sankofa.  However, Pennsylvania law has definitively

precluded such liability.  The Charter School Act states that any "indebtedness incurred by a

charter school in the exercise of the powers specified in this section shall not impose any liability

or legal obligation upon a school entity or upon the Commonwealth (of Pennsylvania)."  24 P.S.

§ 17-1714-A (statute declaring the powers of charter schools).  In addition, the Act states that:

> When a charter is revoked, not renewed, forfeited, surrendered or
> otherwise ceases to operate, the charter school shall be dissolved.
> After the disposition of any liabilities and obligations of the charter
> school, any remaining assets of the charter school, both real and
> personal, shall be distributed on a proportional basis to the school
> entities with students enrolled in the charter school for the last full
> or partial school year of the charter school. In no event shall such
> school entities or the Commonwealth be liable for any outstanding
> liabilities or obligations of the charter school.

24 P.S. § 17-1729-A(I).  For the reasons stated in this Opinion, we deny Plaintiffs' Motion for a

TRO and grant Defendants' Motion to Dismiss.

An appropriate Order follows.

---

[13]Plaintiffs have raised breach of contract claims against Defendant Sankofa.  However, the sole focus of this Opinion is the Motion to Dismiss filed by Defendants PDE and Dumaresq.