IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OLIVIA B. on behalf of BIJON B., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | No. 14-867 |
| SANKOFA ACADEMY CHARTER SCHOOL, DR. LAMONT MCKIM, and LOIS MOSES, | : | |
| Defendants. | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                                    **AUGUST 6, 2014**

Presently before this Court are Plaintiffs, Bijon B. and Olivia B.'s (collectively "Plaintiffs"), "Motion For Default Judgment Against Sankofa Academy Charter School, Dr. Lamont McKim, and Lois Moses and in the Alternative, for Summary Judgment Pursuant to Rule 56 as to Counts I-IV." For the following reasons, Plaintiffs' Motion is denied.

**I.     FACTUAL BACKGROUND**

Plaintiff, Bijon B. ("Bijon"), is a 19-year old student with disabilities who resides within the confines of the Coatesville Area School District ("CASD"). Pls.' Second Am. Compl. ¶ 3. Plaintiff, Olivia B. ("Olivia"), is Bijon's mother. Id. ¶ 4.

Defendant, Sankofa Academy Charter School ("Sankofa"), is a public charter school located at 446 West Gay Street in West Chester, Pennsylvania. Id. ¶ 5. In the context of this

litigation, Sankofa is Bijon's Local Education Agency ("LEA").[1]  Id.  Defendant, Dr. Lamont McKim ("McKim"), is the founder and Chief Executive Officer of Sankofa.  Id. ¶ 8.  Defendant, Lois Moses ("Moses"), is the co-founder, Chief Accounting Officer and legal fiduciary for Sankofa.  Id. ¶ 10.  Moses oversees all of Sankofa's special education programs.  Id.  McKim and Moses are the official policy makers for Sankofa and have personal responsibility for implementing its policies, procedures and expenditures.  Id. ¶ 11.  After a public hearing held on March 24, 2014, the West Chester Area School District revoked Sankofa's charter effective June 20, 2014, for reasons of deficient financial record keeping and poor educational performance.[2]

Plaintiff Bijon has specific learning disabilities and other health impairments that impact his ability to learn, process receptive language, and benefit from educational instruction.  See Pls.' Second Am. Compl. ¶ 12.  Due to these conditions, Bijon requires specialized learning supports and accommodations in order to make meaningful educational progress and to benefit from his educational program as effectively as his non-disabled peers.  Id.

Bijon began attending Sankofa when he was in the seventh grade during the 2007-2008 school year.  Id. ¶¶ 6, 30.  The CASD has funded Bijon's education by making payments of public funds to Sankofa, using a combination of federal and state funds.  Id. ¶ 30.  On June 22, 2012, Olivia filed a due process complaint with Pennsylvania's Office of Dispute Resolution

---

[1] The Charter for Sankofa was revoked effective June 20, 2014.  (See Defs.' Reply Ex. 1.)  Due to this revocation, Sankofa is no longer Bijon's LEA.  (Id.)  It has been recently brought to the Court's attention that Bijon is currently enrolled in the CASD.  (See Doc. No. 60.)

[2] On July 11, 2014, The Philadelphia Inquirer reported that McKim is being investigated by police authorities for "scores of questionable transfers in the school's (Sankofa's) bank accounts."  Report: Former W. Chester Sankofa Director Under Investigation, The Phila. Inquirer, July 11, 2014, available at:
http://articles.philly.com/2014-07-12/news/51361074_1_sankofa-academy-charter-school-low-test-scores-bank-accounts.

alleging that Sankofa had denied Bijon a free appropriate public education[3] ("FAPE") since at least 2008 in violation of his rights protected by the Individuals with Disabilities Education Act ("IDEA"), and the Rehabilitation Act ("RA"), .[4]  Id. ¶ 31.  Among other things, Olivia sought compensatory education and an appropriate placement for Bijon.  Id.  The due process complaint was assigned to a hearing officer with a hearing date set for September 25, 2012.  Id. ¶ 32.  A resolution meeting was held between the parties on July 25, 2012, where the parties agreed to enter into a tolling agreement to preserve Bijon's claims while the parties worked on resolving the issues without a hearing.  Id. ¶ 33.  On October 26, 2012, Sankofa agreed to fund Bijon's placement at The Vanguard School ("Vanguard")[5], and issued a Notice of Recommended Placement ("NOREP") to effectuate the placement.[6]  Id. ¶ 34.  This NOREP stated that "due to Bijon's academic levels the LEA proposed that he receive special education services at an approved private school as his needs cannot be met in his current placement."  Id. ¶ 35.  Olivia signed the NOREP on October 27, 2012, and Bijon began attending Vanguard on or around November 5, 2012.  Id. ¶ 36.

---

[3]The IDEA defines a FAPE as special education and related services that: (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.  20 U.S.C. § 1401(9).

[4]The parties at times refer to these rights protected by the RA as § 504 claims.  These are one in the same as § 504 is a statutory provision of the RA.  As such, these terms are used interchangeably in this Opinion.

[5]Vanguard is a nonprofit, Pennsylvania licensed school located in Malvern, Pennsylvania, that provides special education and clinical services.

[6]A NOREP is utilized by an educational agency to communicate to parents an action proposed or an action refused.  See 34 C.F.R. § 300.503(a)(b).  This notice triggers the parents right to determine how to proceed if there is a dispute.  Id.

A little more than a month later, Olivia entered into a Settlement Agreement (the "Settlement Agreement") with Sankofa to resolve the placement claims she articulated in her due process complaint.  Id. ¶ 42.  In the Settlement Agreement, Olivia relinquished her claims on behalf of Bijon in exchange for Sankofa's promise to fund Bijon's education at Vanguard.  Id. The Agreement was signed by Olivia on December 14, 2012, and by McKim and Moses on January 5, 2013.  Id. ¶¶ 41, 43.  Beginning in April 2013, unbeknownst to Olivia, the CASD or the PDE, Sankofa failed to make tuition payments on Bijon's behalf as required by both the NOREP and the Settlement Agreement.  Id. ¶ 48.  Vanguard made multiple efforts to collect the required tuition payments from Sankofa, and Sankofa repeatedly promised to submit the payments.  Id. ¶ 49.  Sankofa never made good on these promises.  Id.  Furthermore, at no time did Sankofa advise Olivia, the CASD or the PDE that it was taking and keeping the money that the CASD had been paying on behalf of Bijon, nor did Sankofa notify them that it was not providing any funding for Bijon's placement to Vanguard.  Id. ¶ 50.  Due to Sankofa's failure to make any tuition payments on Bijon's behalf since April 2013, Bijon's account is more than $65,000 in arrears.  Id. ¶ 51.  At this time, with the closing of Sankofa, Bijon is currently enrolled in the CASD.  (See Doc. No. 60.)  It is unclear if the CASD will place Bijon at Vanguard for the upcoming school year.

Vanguard has not initiated any administrative or court proceedings against Sankofa to obtain payment for the overdue tuition.  However, Olivia on behalf of Bijon, filed a Motion for a Temporary Restraining Order ("TRO") mandating that Sankofa and McKim "make all tuition payments and comply with all other financial obligations necessary to preserve Bijon B.'s pendent special education placement at the Vanguard School, in accordance with the fully

executed Notice of Recommended Assignment dated October 26, 2012 and the Settlement Agreement dated January 5, 2012." (See Pls.' Mot. for TRO, Feb. 10, 2014.) After a hearing was held on February 18, 2014, where both Sankofa and McKim failed to appear, this Court granted Plaintiffs' Motion and ordered Sankofa and McKim to make the required payments to Vanguard. (See Order, Feb. 18, 2014.) Neither Sankofa nor McKim (collectively, "Defendants") has since made any payments. On March 28, 2014, Plaintiffs filed the instant Motion, and subsequently filed a Supplemental Memorandum of Law. (Pls.' Mot. for Default J. and in the alternative for Summ. J.; Pls.' Supplemental Memo. of Law.) Defendants have failed to appear in this litigation or reply to these filings in any manner.

## II.     STANDARD OF REVIEW

A default judgment may be entered where a party fails to plead or otherwise defend. See Fed. R. Civ. P. 55; see also Black's Law Dictionary (9th ed. 2009). Defaults are disfavored by courts because they avert a decision on the merits. Momah, M.D. v. Albert Einstein Med. Ctr., 161 F.R.D. 304, 307 (E.D. Pa. 1995). Therefore, in close cases the interests of justice warrant a decision on the merits rather than a default judgment. Zawadski de Bueno v. Bueno Castro, 822 F.2d 416, 420 (3d Cir. 1987).

Federal Rule of Civil Procedure 55 governs the procedures for the entry of default and default judgment. See Fed. R. Civ. P. 55. The United States Court of Appeals for the Third Circuit ("Third Circuit") utilizes a two-step process for attaining a default judgment. Husain v. Casino Control Com'n, 265 F. App'x 130, 133 (3d Cir. 2008) (citing 10A Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 2682 (2007)). First, a party must successfully request the Clerk of Court to enter the other party's default. Fed. R. Civ. P.

55(a); Husain, 265 F. App'x at 133.  Second, after receiving the Clerk's entry of default, the party must submit a motion for default judgment to the court.  Fed. R. Civ. P. 55(b); Husain, 265 F. App'x at 133.  Adherence to this procedural sequence is essential as courts have consistently held that the Clerk must first enter a default in order to proceed with a motion to grant default judgment.  Husain, 265 F. App'x at 133 (finding that entry of default by the Clerk is a "general prerequisite" to attain a default judgment by the court); see also Limehouse v. Delaware, 144 F. App'x 921, 923 (3d Cir. 2008) (affirming court's denial of default judgment where plaintiff failed to obtain entry of default); Bensalem Park Maint., Ltd. v. Metro. Reg'l Council of Carpenters, No. 11-2233, 2011 WL 2633154, at *4 (E.D. Pa. July 5, 2011) (denying motion for default as procedurally improper in absence of entry of default).

### III.  DISCUSSION

Plaintiffs request that this Court grant a default judgment in their favor against Defendants.  However, a review of the docket shows that Plaintiffs have failed to obtain an entry of default from the Clerk of Court.  Within this Circuit, the entry of default by the Clerk of Court must precede the granting of a motion for default judgment.  See Husain, 265 F. App'x at 133; Limehouse, 144 F. App'x at 923; Bensalem Park, 2011 WL 2633154, at *4; Int'l Union of Painters and Allied Trades Dist. Council 711 Health & Welfare, Vacation and Finishing Trades Inst. Funds, et al., v. Village Glass Inc., No. 11-1023, 2012 WL 209076, at *1 (D.N.J. Jan. 24, 2012); Composition Roofers Local No. 10 Pension Fund v. VMG Group, No. 12-343, 2012 WL 1207219, at *1 (D.N.J. Apr. 10, 2012); see also Fed. R. Civ. P. 55.  Plaintiffs' failure to follow the proper procedure is fatal to the instant Motion for Default Judgment.  Consequently, we deny Plaintiffs' Motion, but do so without prejudice, in order to allow Plaintiffs the ability to re-file

the Motion after following the proper procedures.[7]

    An appropriate Order follows.

---

[7] We note that the focus of this Opinion is solely on the Motion for Default Judgment, and as such, we do not address Plaintiffs' claims for summary judgment.