

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OLIVIA B. on behalf of BIJON B., | CIVIL ACTION |
| Plaintiffs, | |
| v. | No. 14-867 |
| SANKOFA ACADEMY CHARTER SCHOOL, DR. LAMONT MCKIM, LOIS MOSES, THE PENNSYLVANIA DEPARTMENT OF EDUCATION, and CAROLYN DUMARESQ, | |
| Defendants. | |
| THE PENNSYLVANIA DEPARTMENT OF EDUCATION, and CAROLYN DUMARESQ, | |
| Third Party Plaintiffs, | |
| SANKOFA ACADEMY CHARTER SCHOOL, THE VANGUARD SCHOOL, and VALLEY FORGE EDUCATIONAL SERVICES, | |
| Third Party Defendants. | |



## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                   **NOVEMBER 4, 2014**

    Presently before this Court are several Motions including:

1. The "Motion to Set Aside Default" filed by Defendants, Lamont McKim ("McKim") and Lois Moses ("Moses")(collectively, the "Individual Defendants"), and Plaintiffs, Bijon B. and Olivia B.'s (collectively "Plaintiffs"), Response in Opposition thereto;

2. The "Motion to Set Aside Default" filed by Sankofa Academy Charter School ("Sankofa"), and Plaintiffs' Response in Opposition thereto;

xc: Legal

3. The "Second Motion for Default Judgment Pursuant to Rule 55(b) Against Sankofa Academy Charter School" filed by Plaintiffs, and Sankofa's Response in Opposition thereto;

4. The "Motion for Default Judgment as to Lamont McKim and Lois Moses" filed by Plaintiffs and the Individual Defendants' Response in Opposition thereto; and,

5. The "Motion for Attorneys' Fees"[1] filed by Plaintiffs, and the Individual Defendants and Sankofa's separate Responses in Opposition thereto.

For the reasons set forth below, Plaintiffs' Motions for Default Judgment and Attorneys' Fees are denied, and the Individual Defendants and Sankofa's Motions to Set Aside Default are granted.

## I. BACKGROUND[2]

### A. The Parties

Plaintiff, Bijon B. ("Bijon"), is a 19-year old student with disabilities who resides within the confines of the Coatesville Area School District ("CASD"). Second Am. Compl. ¶ 3. Plaintiff, Olivia B. ("Olivia"), is Bijon's mother. Id. ¶ 4.

Defendant Sankofa was a public charter school located at 446 West Gay Street in West Chester, Pennsylvania. Id. ¶ 5. Defendant McKim, was the founder and Chief Executive Officer of Sankofa. Id. ¶ 8. Defendant Moses was the co-founder, Chief Accounting Officer and legal fiduciary for Sankofa.[3] Id. ¶ 10. After a public hearing held on March 24, 2014, the West

---

[1] Although Plaintiffs have styled this Motion as "Plaintiffs' Response to the Court's Order of August 14, 2014," we refer to it as "Plaintiffs Motion for Attorneys' Fees."

[2] The following recitation of the facts of this case relates only to the instant Motions. A more complete factual record is available at Olivia B. v. Sankofa Academy Charter Sch., No. 14-867, 2014 WL 3797282 (E.D. Pa. Aug. 1, 2014).

[3] Moses disputes Plaintiffs' characterization of her relationship to Sankofa stating that she "had the honorary title of Chief Administrative Officer," but was never actually an employee of Sankofa. (Ind. Defs.' Mot. to Set Aside Def. Ex. C. ¶¶ 4, 5.) Rather, Moses asserts that she volunteered. (Id.)

Chester Area School District voted to revoke Sankofa's charter due to deficient financial record keeping and poor educational performance.[4] See Olivia B., 2014 WL 3797282, at *1. On June 20, 2014, Sankofa's charter was officially revoked and the school was dissolved. See Olivia B. v. Sankofa Academy Charter Sch., No. 14-867, 2014 WL 4816407, at *3 (E.D. Pa. Sept. 29, 2014).

**B. The Factual Record**

Plaintiff Bijon has specific learning disabilities and other health impairments that impact his ability to learn, process receptive language, and benefit from educational instruction. Second Am. Compl. ¶ 12. Due to these conditions, Bijon requires specialized learning supports and accommodations in order to make meaningful educational progress and to benefit from his educational program as effectively as his non-disabled peers. Id.

Bijon began attending Sankofa when he was in the seventh grade during the 2007-2008 school year. Id. ¶¶ 6, 30. On June 22, 2012, Olivia filed a due process complaint with Pennsylvania's Office of Dispute Resolution alleging that Sankofa had denied Bijon a free appropriate public education[5] ("FAPE") since at least 2008 in violation of his rights protected by the Individuals with Disabilities Education Act ("IDEA"), and the Rehabilitation Act ("RA").[6]

---

[4] On July 11, 2014, The Philadelphia Inquirer reported that McKim is being investigated by police authorities for "scores of questionable transfers in the school's (Sankofa's) bank accounts." Report: Former W. Chester Sankofa Director Under Investigation, The Phila. Inquirer, July 11, 2014, available at: http://articles.philly.com/2014-07-12/news/51361074_1_sankofa-academy-charter-school-low-test-scores-bank-accounts.

[5] The IDEA defines a FAPE as special education and related services that: (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required under section 1414(d) of this title. 20 U.S.C. § 1401(9).

[6] The parties at times refer to these rights protected by the RA as § 504 claims. These are one in the same as § 504 is a statutory provision of the RA. As such, these terms are used interchangeably in this Memorandum Opinion.

3

Id. ¶ 31. Among other things, Olivia sought compensatory education and an appropriate placement for Bijon. Id. The due process complaint was assigned to a hearing officer with a hearing date set for September 25, 2012. Id. ¶ 32. A resolution meeting was held between the parties on July 25, 2012, where the parties agreed to enter into a tolling agreement to preserve Bijon's claims while the parties worked on resolving the issues without a hearing. Id. ¶ 33. On October 26, 2012, Sankofa agreed to fund Bijon's placement at The Vanguard School ("Vanguard")[7], and issued a Notice of Recommended Placement ("NOREP") to effectuate the placement.[8] Id. ¶ 34. This NOREP stated that "due to Bijon's academic levels the LEA proposed that he receive special education services at an approved private school as his needs cannot be met in his current placement." Id. ¶ 35. Olivia signed the NOREP on October 27, 2012, and Bijon began attending Vanguard on or around November 5, 2012. Id. ¶ 36.

A little more than a month later, Olivia entered into a Settlement Agreement (the "Agreement") with Sankofa to resolve the placement claims she articulated in her due process complaint. Id. ¶ 42. In the Agreement, Olivia relinquished her claims on behalf of Bijon in exchange for Sankofa's promise to fund Bijon's education at Vanguard. Id. The Agreement was signed by Olivia on December 14, 2012, and by McKim and Moses on January 5, 2013. Id. ¶¶ 41, 43. McKim signed the Agreement in his capacity as CEO of Sankofa, and Moses signed as a witness. Id. at Ex. C.

---

[7] Vanguard is a nonprofit, Pennsylvania licensed school located in Malvern, Pennsylvania, that provides special education and clinical services.

[8] A NOREP is utilized by an educational agency to communicate to parents an action proposed or an action refused. See 34 C.F.R. § 300.503(a)(b). This notice triggers the parents right to determine how to proceed if there is a dispute. Id.

Beginning in April 2013, unbeknownst to Plaintiffs, Sankofa failed to make tuition payments on Bijon's behalf as required by both the NOREP and the Agreement. Id. ¶ 48. Vanguard made multiple efforts to collect the required tuition payments from Sankofa, and Sankofa repeatedly promised to submit the payments. Id. ¶ 49. Sankofa never made good on these promises. Id. Furthermore, Sankofa failed to advise Plaintiffs that it was not providing any funding for Bijon's placement to Vanguard. Id. ¶ 50. Due to Sankofa's failure to make any tuition payments on Bijon's behalf since April 2013, Bijon's account is more than $65,000 in arrears. Id. ¶ 51. There is no evidence that Vanguard attempted to remove Bijon at any time, and it is the Court's understanding that Bijon was able to finish the 2013-2014 school year at Vanguard.[9] Moreover, Vanguard has not initiated any administrative or court proceedings against Sankofa to obtain payment for the overdue tuition.

### C. Relevant Procedural History

Plaintiffs filed a Complaint against Sankofa, McKim and Moses (collectively, "Defendants") on February 10, 2014. See Compl. On March 10, 2014, Plaintiffs amended the Complaint for a second time to include additional Defendants, who are not relevant to the instant Motions. See Second Am. Compl. In this Second Amended Complaint, Plaintiffs allege that Defendants committed violations of the IDEA, the RA, and Section 1983 ("§ 1983").[10] Id. In addition, Plaintiffs allege claims for breach of contract and promissory estoppel under Pennsylvania state law. Id.

After Defendants failed to appear or respond, Plaintiffs filed a Motion for Default Judgment on March 28, 2014. (See Pls.' Mot. for Def. J.) This Motion was denied without

---

[9] At this time, with the closing of Sankofa, Bijon is currently enrolled in the CASD. (See Doc. No. 60.)

[10] The IDEA, 20 U.S.C. § 1400 *et seq.*, the RA, 29 U.S.C. § 794 *et seq.*, and Section 1983, 42 U.S.C. § 1983.

5

prejudice as being procedurally improper because the Clerk of Court ("Clerk") had not entered default. (See Doc. 66.) Plaintiffs then filed a Praecipe for the Entrance of Default against Defendants with the Clerk on August 13, 2014. (See Pls.' Praecipe for Def.) The Clerk entered default on that same day.

On August 28, 2014, the Individual Defendants first appeared in this case by filing a Motion to Set Aside Default to which Plaintiffs filed a Response in Opposition. (See Docs. 72, 76). Then, Plaintiffs filed separate Motions for Default Judgment against Sankofa on September 11, 2014, and against the Individual Defendants on September 16, 2014. (See Docs. 75, 78.) The Individual Defendants filed a Response in Opposition to this Motion on September 19, 2014.

On September 24, 2014, which was one day prior to an in-court hearing between the parties involving the instant Motions, Sankofa filed a Notice of Appearance, a Motion to Set Aside Default and Response in Opposition to Plaintiff's Motion for Default Judgment. (See Docs. 86, 88, 89.)

In total, Plaintiffs seek $95,507.38 from Defendants, which includes $65,000 for the tuition owed under the Agreement, $30,000 in attorneys' fees and $507.38 in costs. (Id.) On August 14, 2014, the Court ordered Plaintiffs to produce the legal authority for awarding attorneys' fees in this case. (See Doc. 68.) Plaintiffs subsequently complied with this Order. Defendants responded and Plaintiffs filed a Reply.

On September 25, 2014, the Court held a hearing to determine the outstanding issues in this case. Present at this in-court hearing were Plaintiffs, the Individual Defendants and Sankofa, who presented oral arguments on the issues relevant to the instant Motions.

## II. DISCUSSION

### A. Default

Federal Rule ("Federal Rule") of Civil Procedure 55 governs the procedures for the entry of default and default judgment. See Fed. R. Civ. P. 55. The United States Court of Appeals for the Third Circuit ("Third Circuit") utilizes a two-step process for attaining a default judgment. Husain v. Casino Control Com'n, 265 F. App'x 130, 133 (3d Cir. 2008) (citing 10A Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 2682 (2007)). First, a party must successfully request the Clerk to enter the other party's default. Fed. R. Civ. P.55(a); Husain, 265 F. App'x at 133. Second, after receiving the Clerk's entry of default, the party must submit a motion for default judgment to the court. Fed. R. Civ. P. 55(b); Husain, 265 F. App'x at 133. Adherence to this procedural sequence is essential as courts have consistently held that the Clerk must first enter a default in order to proceed with a motion to grant default judgment. Husain, 265 F. App'x at 133 (finding that entry of default by the Clerk is a "general prerequisite" to attain a default judgment by the court).

In this case, a default has been entered by the Clerk. However, a default judgment has not yet been entered, although Plaintiffs did file separate Motions for Default Judgment against the Individual Defendants and Sankofa. Since the Court has not granted Plaintiffs' Default Judgment Motions, we must first evaluate the separate Motions to Set Aside Default filed by the Individual Defendants and Sankofa under the "good cause" standard of Rule 55(c). See Fed. R. Civ. P. 55(c) ("The court may set aside an entry of default for good cause."); see also World Entertainment Inc. v. Brown, 487 F. App'x 758, 761 (3d Cir. 2012).

The decision of whether to set aside default under Federal Rule 55(c) for "good cause" lies within the sound discretion of the district court. United States v. $55,518.05 in U.S.

7

Currency, 728 F.2d 192, 195 (3d Cir. 1984). A three factor test controls the district court's decision: (1) whether the defendant appears to have a litigable defense; (2) the prejudice to the plaintiff if default is denied; and (3) whether defendant's delay is due to culpable conduct. Id. These factors are not weighted equally. See Sunoco, Inc. (R & M) v. Global Recycling & Demolition, LLC, 300 F.R.D. 253, 256-57 (E.D. Pa. 2014) (citing Resolution Trust Corp. v. Forest Grove, Inc., 33 F.3d 284, 288 (3d Cir.1994)). Courts have often found that whether a defendant can allege facts that constitute a meritorious defense is the most important factor. Id.

Overall, defaults are disfavored by courts because they avert a decision on the merits. Momah, M.D. v. Albert Einstein Med. Ctr., 161 F.R.D. 304, 307 (E.D. Pa. 1995). Therefore, the interests of justice warrant a decision on the merits rather than a default judgment in close cases. Zawadski de Bueno v. Bueno Castro, 822 F.2d 416, 420 (3d Cir. 1987).

The Individual Defendants and Sankofa argue that default should be set aside because "good cause" is established through the tripartite test. Although the Individual Defendants set forth arguments on all three prongs, we note that Sankofa does not address the culpability of its conduct. Rather, Sankofa has strategically chosen to focus only on the meritorious defense and the prejudice prongs. Sankofa's argument is that default judgment should be denied because Plaintiffs will not be prejudiced, and Sankofa has meritorious defenses to Plaintiffs' claims. (Sankofa Memo. Law in Opp'n to Pls.' Mot. for Def. J., 4.) We now proceed to analyze these factors in light of the facts of the case and the arguments raised in the party's filings and the in-court hearing.

### 1. Litigable Defense

Since this is the most important prong and the threshold question in deciding whether to set aside default, we address this factor first. See In re Subramanian, 245 F. App'x 111, 115 (3d Cir. 2007); Sunoco, 300 F.R.D. at 256-57 (citing Resolution Trust Corp., 33 F.3d at 288). "The showing of a meritorious defense is accomplished when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.'" $55,518.05 in U.S. Currency, 728 F.2d at 195 (quoting Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244 (3d Cir. 1951)). This requires more than a denial of the factual allegations in a plaintiff's complaint. See Airtech v. Born Envtl. Servs., Inc., No. 02-8524, 2003 WL 22097489, at *1 (E.D. Pa. May 27, 2003). In order to show a litigable defense, a defendant must allege facts which, if established, would enable Defendant to prevail in the action. $55,518.05 in U.S. Currency, 728 F.2d at 196.

In total, Plaintiffs have raised five separate claims against Sankofa and the Individual Defendants. In light of our decision to dismiss the third party Defendant, Pennsylvania Department of Education, from this action due to Plaintiffs' failure to demonstrate any violations of the IDEA, the RA and § 1983, Defendants argue that only the state law contract claims remain. See Olivia B., 2014 WL 3797282, at *6-9. Under the law of the case doctrine, which "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case," Defendants contend that Plaintiffs' IDEA, the RA and § 1983 claims against them are precluded. In re Continental Airlines, Inc., 279 F.3d 226, 233 (3d Cir. 2002) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988)).

9

Plaintiffs argue that the Court's previous ruling is inapplicable to their claims against Defendants for two reasons. (Pls.' Resp. in Opp'n to Ind. Defs.' Mot. to Set Aside Def., 11.) First, Plaintiffs assert that our ruling pertained only to the claims against the third party defendant, and not Defendants. (Id.) Second, Plaintiffs argue that "there is no question that there is a FAPE violation here and the factual allegations, which are admitted, place the blame on the individual defendants as much as they do on Sankofa." (Id.) We do not agree.

Although the Opinion cited by Defendants was in the context of the Pennsylvania Department of Education's Motion to Dismiss, we agree with Defendants that under the law of the case doctrine the Court's findings as to Plaintiffs' IDEA, RA and § 1983 claims apply to the litigation as a whole. Moreover, the rationale for our decision to deny these claims as to the Pennsylvania Department of Education is equally applicable to Sankofa and the Individual Defendants. Because "the facts of this case clearly evidence that Bijon was afforded a FAPE," and "indisputably indicate that there was no harm to Bijon," the identity of the Defendant is irrelevant as Plaintiffs have not demonstrated any violation of the applicable statutes. Olivia B., 2014 WL 3797282, at *6, 10. This finding precludes Plaintiffs' IDEA and RA claims. See Coleman v. Pottstown School Dist., No. 13-4724, 2014 WL 4495129, at *5 n.16 (3d Cir. Sept. 15, 2014) (finding that where FAPE was provided IDEA and RA claims must fail). Since Plaintiffs have failed to raise any viable IDEA or RA claims, § 1983, which is not an independent cause of action, is equally inapplicable. Muhammad v. Dempsey, 531 F. App'x 216, 219 (3d Cir. 2013). Moreover, there is a proscription in this Circuit on utilizing § 1983 as a vehicle for claims asserting the denial of FAPE. See A.W. v. Jersey City Public Schools, 486 F.3d 791, 803 (3d Cir. 2007). Thus, the only remaining claims against Defendants are for breach

10

of contract and promissory estoppel under Pennsylvania state law.[11]

As to the remaining state law claims, Plaintiffs contend that Defendants do not set forth a "complete defense" because "the legal argument . . . is vague and conclusory and devoid of facts that would warrant setting aside the default."[12] (Pls.' Resp. in Opp'n to Ind. Defs. Mot. to Set Aside Def. J., 11.) We disagree. Since the defenses set forth by Sankofa and by the Individual Defendants as to these remaining claims differ, we analyze them independently.

### a. Defendant Sankofa

Upon careful review, we find that the defenses set forth by Sankofa to each remaining claim qualify as litigable defenses. In regard to the breach of contract claim, Sankofa raises the defense that Plaintiffs cannot show damages, which are an essential element of such a claim. See Clark Motor Co. v. Manufacturers & Traders Trust Co., 360 F. App'x 340, 346 (3d Cir. 2010) ("In a breach of contract case, damages are a necessary element of the claim."). In respect to the promissory estoppel claim, Sankofa asserts that Pennsylvania law proscribes such a claim because there is a written agreement between Plaintiffs and Sankofa. See Isobunkers, L.L.C. v. Easton Coach Co., No. 09-879, 2010 WL 547518, at *4 (E.D. Pa. Feb. 9, 2010) ("Under Pennsylvania law, an enforceable contract between two parties precludes relief for a claim of promissory estoppel.") (citing Carlson v. Arnot–Ogden Mem'l. Hosp., 918 F.2d 411, 416 (3d

---

[11] The Court further notes that in Olivia B. v. Sankofa Academy Charter Sch., No. 14-867, 2014 WL 3797282 (E.D. Pa. Aug. 1, 2014), we asserted that, "in an effort to sort out this chaotic litigation, we find that, though Plaintiffs' claims appear to implicate IDEA, they are in effect contract law claims. As the Third Circuit has noted in the IDEA context, 'when a settlement agreement was voluntarily and willingly entered by the parties,' the agreement constitutes 'a binding contract between the parties and should have been enforced as written.'" Olivia B., 2014 WL 3797282, at *10 (citing D.R. v. E. Brunswick Bd. of Educ., 109 F.3d 896, 898 (3d Cir. 1997)). "In such cases, the appropriate law to apply is state contract law." Id. (citing J.K. v. Council Rock Sch. Dist., 833 F. Supp. 2d 436, 452 (E.D. Pa. 2011)).

[12] Plaintiffs fail to address this prong as to Sankofa within the extensive briefing in this case. However, we recognize that Plaintiffs' failure could plausibly stem from Sankofa's late appearance in this case. Accordingly, we apply Plaintiffs' argument to all Defendants.

11

Cir. 1990)). Since the successful raising of these defenses would enable Sankofa to prevail on the claims and there is a factual basis for raising these defenses, they constitute litigable defenses for the purpose of our analysis. See $55,518.05 in U.S. Currency, 728 F.2d at 196.

### b. The Individual Defendants

Like Sankofa, the Individual Defendants have also raised meritorious defenses to the remaining claims. Unlike Sankofa, the Individual Defendants' defenses originate from their relationship to the Agreement. The Individual Defendants argue that the Agreement did not impose any personal obligations or liabilities upon them because the "plain language of the Agreement imposed obligations on Sankofa, not on Moses or McKim." (Sankofa Mem. Law in Support of Mot. to Set Aside Def., 11.) The explicit language of the document and the capacity in which the Individual Defendants signed the Agreement supports this contention. See Compl. Ex. C. The Agreement states that "this Agreement contains the entire Agreement between the FAMILY and CHARTER SCHOOL." (Id.) Furthermore, "McKim signed the Agreement as an officer of Sankofa, and Moses simply witnessed his signature." (Sankofa Memo. Law in Support of Mot. to Set Aside Def., 11.) This argument, if established at trial, would preclude any finding of liability. See Viso v. Werner, 471 Pa. 42, 369 A.2d 1185 (1977) (holding that one cannot be liable for a breach of contract unless one is a party to that contract). Thus, we find that the Individual Defendants have raised meritorious defenses to the breach of contract and promissory estoppel claims. See Nationwide Mutual Ins. Co. v. Starlight Ballroom Dance Club, 175 F. App'x 519, 522 (3d Cir. 2006) (stating that "the defaulting party" need not prove that "it will prevail at trial but it must establish that it has a defense which, on its face, is meritorious").

### 2. Prejudice to Plaintiff

In order to establish prejudice, a plaintiff must show that their claim would be "materially impaired because of the loss of evidence, an increased potential for fraud and collusion, substantial reliance on the entry of default, or other substantial factors." See Collura v. Ford, No. 13-4066, 2014 WL 3437733, at * 13 (E.D. Pa. July 15, 2014) (quoting Dizzley v. Friends Rehab. Program, Inc., 202 F.R.D. 146, 147-48 (E.D. Pa. 2001)); see also Feliciano v. Reliant Tooling Co., Ltd., 691 F.2d 653, 657 (3d Cir. 1982). With this in mind, it is clear that any additional expense and/or delay bourn by a plaintiff, if the motion for default judgment is denied, does not constitute prejudice. Feliciano, 691 F.2d at 656-57; Airtech, 2003 WL 22097489, at *2.

Plaintiffs argue that they suffered prejudice because Defendants' actions have "protracted" the litigation, which cost Plaintiffs "tens of thousands of dollars in litigation expenses," and exerted "heartbreaking emotional hardship" on Plaintiffs.[13] (Pls.' Resp. in Opp'n to Ind. Defs.' Mot. to Set Aside Def., 6.) However, cost and delay alone cannot establish prejudice, nor can emotional strain. See Kelly M. v. Luzern Intermediate Unit, 71 F. App'x 116, 118 (3d Cir. 2003) (prejudice is not "the emotional strain of litigating an action on the merits"); J.K. ex rel. Kpakah v. CSX Transp., No. 14-729 , 2014 WL 4632356, at *4 (E.D. Pa. Sept. 16, 2014) (rejecting delay and additional costs as grounds for finding prejudice). Furthermore, the Court is unpersuaded that Plaintiffs' arguments regarding the closing of Sankofa and the probability of Sankofa's bankruptcy constitutes prejudice in this case. See Benton v. Atlantic Dismantling and Site Contractor's Corp., No. 11-6115, 2014 WL 199837, at *4 (E.D. Pa. Jan. 16, 2014) (finding that plaintiff's reliance on judgment to cover litigation expenses and the

---

[13] Although Plaintiffs only assert this prejudice argument against the Individual Defendants, in light of Sankofa's late appearance in this case, we apply this contention to Sankofa as well.

possibility that defendant's bankruptcy will make obtaining evidence more difficult does not constitute "prejudice"). For these reasons, we find that this factor militates in favor of Defendants.

### 3. Culpable Conduct

A finding of culpability can arise from intentional conduct or reckless disregard for repeated communications from the plaintiff or the Court combined with a failure to investigate a serious injury. Hritz v. Wama Corp., 732 F.2d 1178, 1183 (3d Cir. 1984). However, mere negligence alone on the part of the defendant is not sufficient to sustain a finding of culpable conduct. Id. Where a plaintiff cannot produce evidence to show that the failure to answer the Complaint constituted a "strategic decision" by the defendants and not mere negligence, culpability has not been established. See Airtech, 2003 WL 22097489, at *2.

Plaintiffs initially argue that there is a presumption of culpability in this case due to Defendants' failure to respond to the pleadings and the correspondence of the counsel for Plaintiffs, Defendants and the Court. (Pls.' Resp. in Opp'n to Ind. Defs.' Mot. to Set Aside Def. J., 8.) However, this presumption is reserved for cases where defendants have failed to respond. See Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc., No. 11–624, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011). Here, though delayed, Defendants have filed responses and motions. Therefore, a presumption of culpability is not legally justified. Id.

Next, Plaintiffs argue that since the Individual Defendants have made "a deliberate and conscious decision to ignore the litigation," which was "not an honest mistake, innocent mishap, or mere negligence," they have engaged in culpable conduct. (Pls.' Resp. in Opp'n to Ind. Defs.' Mot. to Set Aside Def. J., 9.) In the context of this case, the culpability of the Individual Defendants is a difficult question as the record evidences that there is uncertainty about how

14

much the Individual Defendants knew of this litigation. The Individual Defendants argue that this is a case of confusion and miscommunication because they did not believe that they were being sued individually. (Memo. of Ind. Defs. in Opp'n to Pls.' Mot. for Def. J., 13.) Rather, the Individual Defendants assert that they thought that the suit pertained only to Sankofa. Although the Court expresses skepticism at the Individual Defendants' excuses, the fact of the matter is that there is no concrete evidence that there was culpable conduct. In the fog of this confusing litigation, it does not seem to be a stretch that the Individual Defendants did not believe they were named parties to this suit prior to the entrance of default against them, and further that they believed that by alerting Sankofa to the suit that they had satisfied their individual obligations. Accordingly, the Court is not convinced that the failure to answer the Complaint constituted a "strategic decision" by the Individual Defendants and not mere negligence. See Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000) (requiring evidence that suggests that defendant's delay in filing an answer was due to willful conduct or bad faith). Therefore, culpability has not been established. See Airtech, 2003 WL 22097489, at *2. On the other hand, Sankofa has neglected to address this prong, and we find that, in light of the record, Sankofa has conceded the culpability of its conduct.

### 4. Conclusion

As to the overall issue of default, an accounting of the tripartite test evidences that the entrance of default should be set aside in this case. The most important factor, whether Defendants are able to raise a meritorious defense, militates in favor of Defendants. In addition, we find that Plaintiffs will not suffer prejudice if default is set aside. Finally, although Sankofa's conduct was found to be culpable, we do not find this factor weighs heavily enough to overcome the other two factors, which disfavor default.

The Court's decision to set aside default comports with the long-established practice in this Circuit of favoring the resolution of disputes on the merits. See Kimerg v. Univ. of Scranton, 411 F. App'x 473, 479 (3d Cir. 2010) ("[D]oubts as to whether a defendant should be permitted to file an untimely answer should be resolved in favor of allowing a determination on the merits."); Hill v. Williamsport Police Dep't, 69 F. App'x 49, 51 (3d Cir. 2003) ("Our Court 'does not favor entry of defaults or default judgments' . . . it prefers adjudications on the merits." (quoting $55,518.05 in U.S. Currency, 728 F.2d at 194)); Hritz v. Woma Cor., 732 F.2d 1178, 1181 (3d Cir. 1984) ("[W]e have repeatedly stated our preference that cases be disposed on the merits when practicable."). Accordingly, Defendants' Motions to Set Aside Default are granted. In light of this holding, Plaintiffs' Motions for Default Judgment are denied as moot.

## B. Attorneys' Fees

Generally speaking civil litigants must bear their own attorneys' fees. See Brytus v. Spang & Co., 203 F.3d 238, 241-42 (3d Cir. 2000). Thus, Courts follow "a general practice of not awarding fees to a prevailing party absent explicit statutory authority." John T. ex rel. Paul T. v. Delaware Co. Intermediate Unit, 318 F.3d 545, 555 (3d Cir. 2003) (quoting Key Tronic Corp. v. United States, 511 U.S. 809, 819 (1994)). Where authorized by statute, a plaintiff may be considered a prevailing party, for the purpose of receiving attorneys' fees, if he "succeeds on any significant issue in litigation which achieves some of the benefit the party sought in bringing suit." D.F. v. Collingswood Borough Bd. of Educ., 694 F.3d 488, 501 (3d Cir. 2012) (quoting Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)).

A two-pronged test controls the determination of whether a party qualifies as a prevailing party. See D.F., 694 F.3d at 501. First, the Court must decide "whether plaintiffs achieved relief." Id. Second, if so, then the Court must assess, "whether there is a causal connection

16

between the litigation and the relief from the defendant." Id. (quoting Wheeler v. Towanda Area Sch. Dist., 950 F.2d 128, 131 (3d Cir.1991)).

Plaintiffs seek an Order granting attorneys' fees against Sankofa and the Individual Defendants in the amount of $30,507.38.[14] (Pls.' Mot. for Attys.' Fees ¶ 10.) The sole justification presented by Plaintiffs for an award of attorneys' fees is that they were a "prevailing party," and, as such, are entitled to attorneys' fees under the IDEA, the RA and § 1983.[15] (Id. ¶¶ 1, 4.) The crux of Plaintiffs argument is that, since default was entered by the Clerk, the factual allegations in the Amended Complaint are deemed admitted and, therefore, Plaintiffs have "prevailed" on the three aforementioned statutory causes of action. (Id.)

We deny Plaintiffs' request for attorneys' fees because it relies on a mistaken understanding of the effect of the entrance of default. While the entrance of default does admit well-pleaded factual allegations, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane § 2688, at 63 (3d ed. 1998); see also DirectTV Inc. v. Pepe, 431 F.3d 162, 165 (3d Cir. 2005); Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1392–93 (9th Cir. 1988) (vacating default entered on legally insufficient claim because a default admits only well-pleaded facts and not legal conclusions); Joe Hand Promotions, Inc. v. Yakubets, No. 12-4583, 2013 WL 5224123, at *1 (E.D. Pa. Sept. 17, 2013) (stating that court need not accept legal conclusions upon entrance

---

[14] Plaintiffs' calculation of this total includes $30,000 in attorneys' fees and $507.38 in costs. (Pls.' Mot. for Attys.' Fees ¶¶1, 4.)

[15] Specifically, Plaintiffs cite to the following statutes as allowing a "prevailing party" an award of attorneys' fees: 20 U.S.C. § 1415 (i)(3)(b); 29 U.S.C. § 794a(b); and, 42 U.S.C. § 1988(b). (Pls.' Mot. for Attys.' Fees ¶ 2.)

of default). Thus, it is the role of the Court to determine the conclusions of law to be drawn from the well-pleaded facts.

As stated previously, the Court considered the viability of Plaintiffs' IDEA, RA, and § 1983 claims, and reached the legal conclusion that no cause of action existed under any of these statutes. See Olivia B., 2014 WL 3797282, at *6-9 (granting Pennsylvania Dept. of Education's Motion to Dismiss). This denial reflected the Court's view that the facts contradict Plaintiffs' claims and "indisputably indicate that there was no harm to Bijon."[16] Id. at *10. Rather, we concluded that, if any causes of action exist in this case, the proper recourse for Plaintiffs' claims was a contract action under Pennsylvania law. Id. at 10 (citing D.R. v. E. Brunswick Bd. of Educ., 109 F.3d 896, 898 (3d Cir.1997); J.K. v. Council Rock Sch. Dist., 833 F. Supp. 2d 436, 452 (E.D. Pa. 2011)). As such, from a logical standpoint, this litigation is outside the ambit of the statutory provisions cited by Plaintiffs as allowing for an award of attorneys' fees. Furthermore, the explicit denial of the Plaintiffs' IDEA, RA and § 1983 claims renders attorneys' fees unavailable because Plaintiffs cannot qualify as a "prevailing party." See John T. ex rel. Paul T., 318 F.3d at 556 (citing Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources, 532 U.S. 598, 603-04 (2001) (holding that to qualify as a "prevailing party," Plaintiffs must have been "successful" by being awarded some type of relief by the Court)); see also W.H. v. Schuylkill Valley Sch. Dist., 954 F. Supp. 2d 315, 331 (E.D. Pa. 2013) (finding that plaintiffs were not a "prevailing party" because they did not

---

[16] As noted previously, this holding was not specific to the Defendant Pennsylvania Department of Education, but, rather, it applied to the action as a whole under the Law of the Case Doctrine. "[T]he law of the case doctrine limits re-litigation of an issue once it has been decided in an earlier stage of the same litigation." Hamilton v. Leavy, 322 F.3d 776, 786 (3d Cir. 2003). The doctrine has an exception which allows a court to revisit an earlier ruling upon the addition of new material evidence to the record. Id. at 787. However, this is not the case here as there has been no new evidence raised by Plaintiffs that would make this doctrine inapplicable.

succeed on the merits of IDEA and RA claims). Therefore, no legal basis exists for the Court to award the fees sought by Plaintiffs. Consequently, Plaintiffs' Motions are denied.

### III.     CONCLUSION

For the aforementioned reasons, the Motions to Set Aside Default filed by the Individual Defendants and Sankofa are granted. In addition, Plaintiffs' Motions for Attorneys' Fees are denied. Furthermore, in consideration of this holding, the Plaintiffs' Motions for Default Judgment separately filed against the Individual Defendants and Sankofa are denied as moot.

An appropriate Order follows.

11/4/14 mal.