

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OLIVIA B. on behalf of BIJON B., | CIVIL ACTION |
| Plaintiffs, | |
| v. | No. 14-867 |
| SANKOFA ACADEMY CHARTER SCHOOL, DR. LAMONT MCKIM, LOIS MOSES, THE PENNSYLVANIA DEPARTMENT OF EDUCATION, and CAROLYN DUMARESQ, | |
| Defendants. | |
| THE PENNSYLVANIA DEPARTMENT OF EDUCATION, and CAROLYN DUMARESQ, | |
| Third Party Plaintiffs, | |
| v. | |
| SANKOFA ACADEMY CHARTER SCHOOL, THE VANGUARD SCHOOL, and VALLEY FORGE EDUCATIONAL SERVICES, | |
| Third Party Defendants. | |



## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                           DECEMBER *19*   , 2014

Presently before this Court are separate Motions to dismiss filed by Defendants, Lamont McKim and Lois Moses (the "Individual Defendants") and Defendant, Sankofa Academy Charter School ("Sankofa"), and the Responses in Opposition filed by Plaintiffs, Bijon B. and Olivia B. ("Plaintiffs"). For the reasons set forth below, the Individual Defendants' Motion is granted in full, and Sankofa's Motion is granted in part.

1

## I. BACKGROUND[1]

### A. The Parties

Plaintiff, Bijon B. ("Bijon"), is a 19-year old student with disabilities who resides within the confines of the Coatesville Area School District ("CASD"). Sec. Am. Compl. ¶ 3. Plaintiff, Olivia B. ("Olivia"), is Bijon's mother. Id. ¶ 4.

Defendant Sankofa was a public charter school located at 446 West Gay Street in West Chester, Pennsylvania. Id. ¶ 5. Defendant McKim, was the founder and Chief Executive Officer of Sankofa. Id. ¶ 8. Defendant Moses was the co-founder, Chief Accounting Officer and legal fiduciary for Sankofa.[2] Id. ¶ 10. After a public hearing held on March 24, 2014, the West Chester Area School District voted to revoke Sankofa's charter due to deficient financial record keeping and poor educational performance.[3] See Olivia B., 2014 WL 3797282, at *1. On June 20, 2014, Sankofa's charter was officially revoked and the school was dissolved. See Olivia B. v. Sankofa Academy Charter Sch., No. 14-867, 2014 WL 4816407, at *3 (E.D. Pa. Sept. 29, 2014).

### B. The Factual Record

Plaintiff Bijon has specific learning disabilities and other health impairments that impact his ability to learn, process receptive language, and benefit from educational instruction. Sec.

---

[1] The following recitation of the facts of this case relates only to the instant Motions. A more complete factual record is available at Olivia B. v. Sankofa Academy Charter Sch., No. 14-867, 2014 WL 3797282 (E.D. Pa. Aug. 1, 2014).

[2] Moses disputes Plaintiffs' characterization of her relationship to Sankofa stating that she "had the honorary title of Chief Administrative Officer," but was never actually an employee of Sankofa. (Ind. Defs.' Mot. to Set Aside Def.; Ex. C. ¶¶ 4, 5.) Rather, Moses asserts that she volunteered. (Id.)

[3] On July 11, 2014, *The Philadelphia Inquirer* reported that McKim is being investigated by police authorities for "scores of questionable transfers in the school's (Sankofa's) bank accounts." Report: Former W. Chester Sankofa Director Under Investigation, The Phila. Inquirer, July 11, 2014, available at: http://articles.philly.com/2014-07-12/news/51361074_1_sankofa-academy-charter-school-low-test-scores-bank-accounts.

Am. Compl. ¶ 12. Due to these conditions, Bijon requires specialized learning supports and accommodations in order to make meaningful educational progress and to benefit from his educational program as effectively as his non-disabled peers. Id.

Bijon began attending Sankofa when he was in the seventh grade during the 2007-2008 school year. Id. ¶¶ 6, 30. On June 22, 2012, Olivia filed a due process complaint with Pennsylvania's Office of Dispute Resolution alleging that Sankofa had denied Bijon a free appropriate public education[4] ("FAPE") since at least 2008 in violation of his rights protected by the Individuals with Disabilities Education Act ("IDEA"), and the Rehabilitation Act ("RA").[5] Id. ¶ 31. Among other things, Olivia sought compensatory education and an appropriate placement for Bijon. Id. The due process complaint was assigned to a hearing officer with a hearing date set for September 25, 2012. Id. ¶ 32. A resolution meeting was held between the parties on July 25, 2012, where the parties agreed to enter into a tolling agreement to preserve Bijon's claims while the parties worked on resolving the issues without a hearing. Id. ¶ 33. On October 26, 2012, Sankofa agreed to fund Bijon's placement at The Vanguard School ("Vanguard")[6], and issued a Notice of Recommended Placement ("NOREP") to effectuate the

---

[4] The IDEA defines a FAPE as special education and related services that: (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required under section 1414(d) of this title. 20 U.S.C. § 1401(9).

[5] The parties at times refer to these rights protected by the RA as § 504 claims. These are one in the same as § 504 is a statutory provision of the RA. As such, these terms are used interchangeably in this Memorandum Opinion.

[6] Vanguard is a nonprofit, Pennsylvania licensed school located in Malvern, Pennsylvania, that provides special education and clinical services.

3

placement.[7] Id. ¶ 34. This NOREP stated that "due to Bijon's academic levels the LEA proposed that he receive special education services at an approved private school as his needs cannot be met in his current placement." Id. ¶ 35. Olivia signed the NOREP on October 27, 2012, and Bijon began attending Vanguard on or around November 5, 2012. Id. ¶ 36.

A little more than a month later, Olivia entered into a Settlement Agreement (the "Agreement") with Sankofa to resolve the placement claims she articulated in her due process complaint. Id. ¶ 42. In the Agreement, Olivia relinquished her claims on behalf of Bijon in exchange for Sankofa's promise to fund Bijon's education at Vanguard. Id. The Agreement was signed by Olivia on December 14, 2012, and by McKim and Moses on January 5, 2013. Id. ¶¶ 41, 43. McKim signed the Agreement in his capacity as CEO of Sankofa, and Moses signed as a witness. Id. at Ex. C.

Beginning in April 2013, unbeknownst to Plaintiffs, Sankofa failed to make tuition payments on Bijon's behalf as required by both the NOREP and the Agreement. Id. ¶ 48. Vanguard made multiple efforts to collect the required tuition payments from Sankofa, and Sankofa repeatedly promised to submit the payments. Id. ¶ 49. Sankofa never made good on these promises. Id. Furthermore, Sankofa failed to advise Plaintiffs that it was not providing any funding for Bijon's placement to Vanguard. Id. ¶ 50. Due to Sankofa's failure to make any tuition payments on Bijon's behalf since April 2013, Bijon's account is more than $65,000 in arrears. Id. ¶ 51. There is no evidence that Vanguard attempted to remove Bijon at any time, and it is the Court's understanding that Bijon was able to finish the 2013-2014 school year at

---

[7] A NOREP is utilized by an educational agency to communicate to parents an action proposed or an action refused. See 34 C.F.R. § 300.503(a)(b). This notice triggers the parents right to determine how to proceed if there is a dispute. Id.

Vanguard.[8] Moreover, Vanguard has not initiated any administrative or court proceedings against Sankofa to obtain payment for the overdue tuition.

## C. Relevant Procedural History

Plaintiffs filed a Complaint against Sankofa, McKim and Moses (collectively, "Defendants") on February 10, 2014. See Compl. On March 10, 2014, Plaintiffs amended the Complaint for a second time to include additional Defendants, who are not relevant to the instant Motions. See Sec. Am. Compl. In this Second Amended Complaint, Plaintiffs allege that Defendants committed violations of the IDEA, the RA, and Section 1983 ("§ 1983").[9] Id. In addition, Plaintiffs allege claims for breach of contract and promissory estoppel under Pennsylvania state law. Id.

After Defendants failed to appear or respond, Plaintiffs filed a Motion for Default Judgment on March 28, 2014. (See Pls.' Mot. for Def. J.) This Motion was denied without prejudice as being procedurally improper because the Clerk of Court ("Clerk") had not entered default. (See Doc. 66.) Plaintiffs then filed a Praecipe for the Entrance of Default against Defendants with the Clerk on August 13, 2014. (See Pls.' Praecipe for Def.) The Clerk entered default on that same day.

On August 28, 2014, the Individual Defendants first appeared in this case by filing a Motion to Set Aside Default to which Plaintiffs filed a Response in Opposition. (See Docs. 72, 76). Then, Plaintiffs filed separate Motions for Default Judgment against Sankofa on September 11, 2014, and against the Individual Defendants on September 16, 2014. (See Docs. 75, 78.) The Individual Defendants filed a Response in Opposition to this Motion on September 19, 2014.

---

[8] At this time, with the closing of Sankofa, Bijon is currently enrolled in the CASD. (See Doc. No. 60.)

[9] The IDEA, 20 U.S.C. § 1400 et seq., the RA, 29 U.S.C. § 794 et seq., and Section 1983, 42 U.S.C. § 1983.

5

On September 24, 2014, which was one day prior to an in-court hearing between the parties involving the instant Motions, Sankofa filed a Notice of Appearance, a Motion to Set Aside Default and Response in Opposition to Plaintiff's Motion for Default Judgment. (See Docs. 86, 88, 89.)

In a Memorandum Opinion decided on November 4, 2014, the Court set aside the entrance of default and denied Plaintiffs' Motions for Default Judgment and Attorneys' Fees against the Individual Defendants and Sankofa. (See Doc. 99.) In reaching this decision, the Court found that the "law of case" doctrine applied to Plaintiffs' IDEA, RA and § 1983 claims against the Individual Defendants and Sankofa.[10] See Olivia B. v. Sankofa Academy Charter Sch., No. 14-867, 2014 WL 5639508, at * 5 (E.D. Pa. Nov. 4, 2014).

On November 14, 2014, the Individual Defendants and Sankofa filed separate Motions to Dismiss. (Docs. 104, 105.) Plaintiffs responded to each Motion individually on December 1, 2014. (Docs. 106, 107.)

## II. STANDARD OF LAW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Pursuant to Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has failed to set forth a claim from which relief may be granted. Fed. R. Civ. P. 12(b)(6); see also Lucas v. City of Phila., No. 11-4376, 2012 WL 1555430, at *2 (E.D. Pa. May 2, 2012) (citing Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005)). In evaluating a motion to dismiss, the court must view any reasonable inferences from the factual allegations in a light most favorable to the plaintiff. Buck v. Hamilton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2002).

---

[10] The "law of case" doctrine will be discussed in greater detail later in this Memorandum Opinion.

The Supreme Court set forth in Twombly, and further defined in Iqbal, a two-part test to determine whether to grant or deny a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The United States Court of Appeals for the Third Circuit ("Third Circuit") has noted that these cases signify the progression from liberal pleading requirements to more "exacting scrutiny" of the complaint. Wilson v. City of Phila., 415 F. App'x. 434, 436 (3d Cir. 2011).

Initially, the court must ascertain whether the complaint is supported by well-pleaded factual allegations. Iqbal, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Twombly, 550 U.S. at 555. Conclusions of law can serve as the foundation of a complaint, but to survive dismissal they must be supported by factual allegations. Iqbal, 556 U.S. at 679. These factual allegations must be explicated sufficiently to provide a defendant the type of notice that is contemplated by Rule 8. See Fed. R. Civ. P. 8(a)(2) (requiring a short and plain statement of the claim showing that the pleader is entitled to relief); see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Where there are well-pleaded facts, courts must assume their truthfulness. Iqbal, 556 U.S. at 679.

Upon a finding of a well-pleaded complaint, the court must then determine whether these allegations "plausibly" give rise to an entitlement to relief. Id. at 679. This is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Plausibility compels the pleadings to contain enough factual content to allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. 544 at 570). This is not a probability requirement; rather plausibility necessitates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556

7

U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" Id. (quoting Twombly, 550 U.S. at 557). In other words, a complaint must not only allege entitlement to relief, but must demonstrate such entitlement with sufficient facts to nudge the claim "across the line from conceivable to plausible." Id. at 683; see also Holmes v. Gates, 403 F. App'x 670, 673 (3d Cir. 2010).

### III.   DISCUSSION

Plaintiffs have alleged claims pursuant to federal and state law against the Individual Defendants and Sankofa (collectively "Defendants"). In individually filed Motions to Dismiss, Defendants petition the Court to dismiss all of Plaintiffs' claims with prejudice. (See Ind. Defs.' Mot. to Dismiss at 2; Sankofa Mot. to Dismiss at 10). With an eye toward judicial efficiency and the most expedient resolution of this protracted litigation, we address both Defendants' Motions to Dismiss in this Memorandum Opinion.

#### A. Plaintiffs' Claims Under Federal Law

In light of the fact that the Court has previously stated on more than one occasion that Plaintiffs do not have actionable federal claims, Defendants cite to the "law of case" doctrine as the basis for the dismissal of Plaintiffs' IDEA, RA and § 1983 claims against them. (See Ind. Defs.' Mot. to Dismiss at 1; Sankofa's Mot. to Dismiss at 6.) This doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." In re Continental Airlines, Inc., 279 F.3d 226, 233 (3d Cir. 2002) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988)). In a recent Memorandum Opinion in this case, the Court applied the "law of case" doctrine to Plaintiffs' federal claims, stating:

> Although the Opinion cited by Defendants was in the context of
> the Pennsylvania Department of Education's Motion to Dismiss,
> we agree with Defendants that under the law of the case doctrine
> the Court's findings as to Plaintiffs' IDEA, RA and § 1983 claims
> apply to the litigation as a whole. Moreover, the rationale for our
> decision to deny these claims as to the Pennsylvania Department of
> Education is equally applicable to Sankofa and the Individual
> Defendants. Because "the facts of this case clearly evidence that
> Bijon was afforded a FAPE," and "indisputably indicate that there
> was no harm to Bijon," the identity of the Defendant is irrelevant
> as Plaintiffs have not demonstrated any violation of the applicable
> statutes. Olivia B., 2014 WL 3797282, at *6, 10. This finding
> precludes Plaintiffs' IDEA and RA claims. See Coleman v.
> Pottstown School Dist., No. 13-4724, 2014 WL 4495129, at *5
> n.16 (3d Cir. Sept. 15, 2014) (finding that where FAPE was
> provided IDEA and RA claims must fail). Since Plaintiffs have
> failed to raise any viable IDEA or RA claims, § 1983, which is not
> an independent cause of action, is equally inapplicable.
> Muhammad v. Dempsey, 531 F. App'x 216, 219 (3d Cir. 2013).
> Moreover, there is a proscription in this Circuit on utilizing § 1983
> as a vehicle for claims asserting the denial of FAPE. See A.W. v.
> Jersey City Public Schools, 486 F.3d 791, 803 (3d Cir. 2007).
> Thus, the only remaining claims against Defendants are for breach
> of contract and promissory estoppel under Pennsylvania state
> law.[11]

Olivia B., 2014 WL 5639508, at * 5.

Despite our previous invocation of the "law of case" doctrine in this case, this doctrine does not apply automatically to Defendants' Motions. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988). Rather, the United States Supreme Court explained that, "[a] Court has the power to revisit prior decisions of its own . . . in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where

---

[11] The Court further notes that in Olivia B., 2014 WL 3797282, we asserted that, "in an effort to sort out this chaotic litigation, we find that, though Plaintiffs' claims appear to implicate IDEA, they are in effect contract law claims." Olivia B., 2014 WL 3797282, at *10. "As the Third Circuit has noted in the IDEA context, 'when a settlement agreement was voluntarily and willingly entered by the parties,' the agreement constitutes 'a binding contract between the parties and should have been enforced as written.'" Olivia B., 2014 WL 3797282, at *10 (citing D.R. v. E. Brunswick Bd. of Educ., 109 F.3d 896, 898 (3d Cir. 1997)). "In such cases, the appropriate law to apply is state contract law." Id. (citing J.K. v. Council Rock Sch. Dist., 833 F. Supp. 2d 436, 452 (E.D. Pa. 2011)).

the initial decision was clearly erroneous and would create a manifest injustice." Christianson, 486 U.S. at 816 (quoting Arizona v. California, 460 U.S. 605, 618 (1983)).

In relation to the Motions to Dismiss, Plaintiffs argue that the "law of case" doctrine is inapplicable because the Court's previous denial of their federal law claims was erroneous. Prior to analyzing the merits of this argument, we note that Plaintiffs continue a practice that has been commonplace throughout this litigation – broadly citing to cases in support of their arguments with zero legal analysis of the non-pinpoint cited cases. Furthermore, Plaintiffs' Responses are a recycling of the unsupported public policy arguments that they have raised throughout this litigation. Regardless of these circumstances, the bottom line in this case is that Bijon did not suffer any violation of his federal rights. As such, Plaintiffs have failed to demonstrate the existence of extraordinary circumstances necessary to warrant the preclusion of the "law of case" doctrine. Christianson, 486 U.S. at 816. Consequently, Plaintiffs' federal law claims pursuant to the IDEA, the RA, and § 1983 are dismissed with prejudice. In reaching this conclusion, we strongly disagree with Plaintiffs' contention that our decision denies any accountability for the alleged wrongful actions of Defendants. The fact that the Court has concluded the proper avenue for redress is a state contract law action disproves this notion.[12]

---

[12] In Olivia B., 2014 WL 3797282, at *10, relying on Third Circuit precedent, we found that Plaintiffs' federal claims were in effect state law contract claims. Specifically, we stated:

> In an effort to sort out this chaotic litigation, we find that, though Plaintiffs' claims appear to implicate IDEA, they are in effect contract law claims. As the Third Circuit has noted in the IDEA context, when a "settlement agreement was voluntarily and willingly entered by the parties," the agreement constitutes "a binding contract between the parties and should have been enforced as written." D.R. v. E. Brunswick Bd. of Educ., 109 F.3d 896, 898 (3d Cir. 1997). In such cases, the appropriate law to apply is state contract law. J.K. v. Council Rock Sch. Dist., 833 F.Supp.2d 436, 452 (E.D. Pa. 2011).

Olivia B., 2014 WL 3797282, at *10.

10

### B. Plaintiffs' Claims Under Pennsylvania Law

Plaintiffs have chosen "not (to) contest the Individual Defendants' motion to dismiss the state law contract claims against them." See Pls.' Resp. in Opp'n, 2. As such, we dismiss the state law claims against the Individual Defendants. At this juncture, only Plaintiffs' state law claims against Sankofa for breach of contract and promissory estoppel remain.

The Motion to Dismiss filed by Sankofa seeks the dismissal of Plaintiffs' state law claims for distinct reasons. First, Sankofa argues that since Plaintiffs did not suffer any damages, the breach of contract law claim is not actionable. (Sankofa's Mot. to Dismiss at 7.) Second, Sankofa contends that because there is an enforceable contract between the parties, a claim for promissory estoppel cannot be sustained. (Id. at 9.) In response, Plaintiffs have submitted arguments, which are strikingly devoid of any citation to any supporting legal precedent.

#### 1. Breach of Contract

A legally sufficient breach of contract claim, requires Plaintiffs to demonstrate: "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages." CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. 1999). Here, the sole focus of Sankofa's Motion to Dismiss is on the damages requirement. Sankofa argues that, since Bijon was permitted to complete his schooling at Vanguard and because Vanguard has not attempted to collect any of the unpaid tuition, Plaintiffs have failed to show any actual damages. (Sankofa's Mot. to Dismiss at 8-9.) In response, Plaintiffs' contend that the contractual harm here is the non-payment of tuition in violation of the Settlement Agreement entered between Plaintiffs and Sankofa. (Pls.' Resp. in Opp'n at 5.)

11

In regards to damages under Pennsylvania law, the Supreme Court of Pennsylvania has consistently held that, "[w]here one party to a contract without any legal justification, breaches the contract, the other party is entitled to recover, unless the contract provided otherwise, whatever damages he suffered, provided (1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty." Ferrer v. Trustees of Univ. of Penn., 573 Pa. 310, 341 (Pa. 2002) (quoting Taylor v. Kaufhold, 368 Pa. 538, 546 (Pa. 1951)).

At the summary judgment stage, we find that Sankofa's theory for dismissing the breach of contract claim is baseless because the damages claimed by Plaintiffs "were such as would naturally and ordinarily result" from a breach of the Settlement Agreement, and can be proven with exacting certainty. Id. Thus, we find that Plaintiffs have alleged a cognizable claim for damages under Pennsylvania law, and deny Sankofa's Motion to Dismiss as to the breach of contract claim.

### 2. Promissory Estoppel

An actionable claim for promissory estoppel, requires Plaintiffs to demonstrate that: "(1) the promissor made a promise that [s]he should have reasonably expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only be enforcing the promise." Crouse v. Cyclops Industries, 560 Pa. 394, 403 (2000) (citing Restatement (Second) Contracts § 90). Here, Plaintiffs' promissory estoppel claim asserts that "[d]ue to Plaintiffs' justifiable reliance on the Sankofa defendants' promises, the Sankofa defendants are

bound by the doctrine of promissory estoppel to adhere to the terms of the Settlement Agreement whether or not it constitutes a formal contract." (Sec. Am. Compl. ¶ 88.)

Sankofa argues that this claim must be dismissed because a claim for promissory estoppel cannot exist where there is an enforceable contract. Sankofa's Mot. to Dismiss at 9. However, Courts applying Pennsylvania law have allowed for the pleading of promissory estoppel claims as an alternative to claims for breach of contract. See Woodward v. ViroPharma Inc., No. 3222-2011, 2013 WL 1485110, at *10 (Pa. Super. Apr. 3, 2013); Eastern Roofing Sys., Inc. v. Cestone, No. 08-8764, 2012 WL 6051097, at *5 (Pa. Com. Pl. Apr. 13, 2012); JK Roller Architects, L.L.C. v. Tower Investments, Inc., No. 2778-2002, 2003 WL 1848101, at *1 n.1 (Pa. Com. Pl. Mar. 17, 2003) (finding that promissory estoppel is a proper alternative cause of action to a breach of contract claim) (citing Birchwood Lakes Comm. Ass'n, Inc. v. Comis, 296 Pa. Super. 77, 85 (1980)). This is precisely the action undertaken by Plaintiffs, and as such, is permissible. Furthermore, at the motion to dismiss stage, we find that dismissing Plaintiffs' claims for promissory estoppel would be premature. See Resolution Tr. Corp. v. Baker, No. 93-0093, 1994 WL 637359, at *6 (E.D. Pa. Nov. 14, 1994) (finding that dismissal of promissory estoppel claims at motion to dismiss stage was premature). Rather, we believe that it is prudent to allow the claim for promissory estoppel to remain until further determination is made on the breach of contract action. Consequently, Sankofa's Motion to Dismiss is denied as to Plaintiffs' promissory estoppel claim.

## IV.  CONCLUSION

For the aforementioned reasons, we grant the Motion to Dismiss filed by the Individual Defendants in full. Furthermore, the Court grants Sankofa's Motion to Dismiss as to Plaintiffs' federal law claims, but denies dismissal regarding Plaintiffs' state law claims for breach of

contract and promissory estoppel. Finally, in light of the record and the fact that Plaintiffs have amended the Complaint on two occasions, dismissal of the claims is with prejudice as further amendment of the Complaint would prove futile. See Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (allowing dismissal with prejudice where amendment is futile); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1994) (stating that "futility" means that "the complaint, as amended, would fail to state a claim upon which relief could be granted").

An appropriate Order follows.

ENTERED
DEC 1 9 2014
CLERK OF COURT